No. 29,656.

H. F. PETERS and BARBARA PETERS, *Appellees*, v. E. L. CAVANAH, *Appellant*.

(295 Pac. 693.)

Opinion filed February 7, 1931.

*A. M. Ebright, Allen B. Burch, J. B. Patterson* and *P. K. Smith,* all of Wichita, for the appellant.

*Tom Pringle, H. V. Howard, W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: Plaintiffs sued to recover damages for the wrongful death of their son, George F. Peters. Judgment was rendered for the plaintiffs, and the defendant appeals.

The defendant was engaged in the business of bridge and road building in the state of Kansas, and had elected to come under the workmen's compensation act. He owned a farm in Sumner county, on which was a hedge fence which he desired to have taken out. To do that he purchased a stump puller and arranged with the plaintiff H. F. Peters, his tenant on the farm, to furnish a team and hitch to operate the stump puller and to furnish his son, the deceased George F. Peters, to help operate that machinery. The power to operate the stump puller was furnished by the team being hitched to a sweep fifteen feet long, which operated the stump puller by winding around a drum a cable attached to the stump being pulled.

The evidence tended to prove that the stump puller was old and out of repair; that the team was hitched to a doubletree attached to the end of the sweep by a small chain on the end of which was a weak hook; that in operating the stump puller the sweep would sometimes get caught on the cables, one of which was attached to the tree being pulled, and the other of which anchored the stump puller; that when the sweep caught on the cables it was necessary to loosen it; that the defendant had instructed George F. Peters, when he desired to loosen the sweep from either of the cables, to go behind the sweep and loosen it with a crowbar; that the sweep caught; that George F. Peters went behind the sweep to get the crowbar for the purpose of loosening the sweep from the cable on which it was caught; and that the hook on the chain attaching the doubletree to the sweep straightened, released the team, and allowed the sweep to swing backward with great force, because of the tension on it in pulling up a tree, and to strike George F. Peters and injure him, from which injury he died the next day. There was also evidence which tended to show that the chain and the hook were too small for the use made of them, and that the machinery for stopping the sweep, if it became loose, was defective and did not work.

Special questions were answered by the jury as follows:

"1. Did the defendant Cavanah or Langley know at the time of the accident that the hook on exhibit 'A' had not been tempered? A. No.

"2. Would the accident to and the death of George Peters have occurred if the hook on exhibit A had not straightened out? A. No.

"3. Who was the owner of the chain and hook, exhibit A, which was being used on the day the accident occurred? A. H. F. Peters.

"4. Did defendant or Langley warn George Peters of the danger of getting behind the sweep when same was under tension? A. No.

"5. Was it necessary, in order to operate the stump puller, to get behind the sweep when same was under tension? A. No.

"5a. Could the said George Peters, by the exercise of his faculties of sight, have seen that the sweep was under tension immediately prior to the time of the accident? A. Yes.

"6. What was there about the hook on exhibit A that the defendant or Langley knew that the deceased did not know? A. Too small.

"7. Was the danger of stepping behind the sweep when same was under tension as obvious to George Peters as it was to the defendant or to Langley? A. No.

"8. Would a reasonably prudent person have appreciated the danger of stepping behind the sweep when same was under tension? A. No.

"9. Were the conditions which surrounded the work open to inspection and visible to George Peters? A. Yes. . . .

"10. Could George Peters have observed any defect connected with the mechanical condition of the stump puller if he had made a casual inspection of the same? A. Yes.

"11. Did George Peters give the defendant or Langley any notice of any mechanical defect connected with the stump puller of which he had knowledge? A. No.

"12. Was any danger connected with the employment of George Peters more apparent to the defendant or Langley than it was to George Peters? A. Yes.

"12a. If you answer the foregoing question 'Yes,' then state: (1) What was such danger? A. Inferior hitch. (2) In what respect was it more apparent to the defendant or Langley? A. More experienced and supervising.

"13. Was there any unusual danger connected with the work which George Peters was doing? A. Yes. .

"13a. If you answer the foregoing question 'Yes,' then state what such unusual danger consisted of. A. Sweep catching on cable unfastening sweep from cable.

"13b. Was such danger obvious to an ordinarily prudent person. A. Yes.

"13c. Did George Peters appreciate such a danger and continue to work about the stump puller thereafter? A. No."

The defendant in his abstract sets out numerous specifications of error. In his brief he presents five different matters which he argues.

1. The first matter complained of is that "in ruling that whether or not the plaintiff's remedy was under the workmen's compensation

act was a question of fact, and then failing to instruct the jury on that issue, or submit that fact to the jury; and failing to hold, as a matter of law, that the plaintiffs' remedy was under the workmen's compensation act." The defendant was operating under the workmen's compensation act in building roads and bridges. The work being done on the farm was not building roads or bridges. It was farm work. That kind of work is exempt from the operation of the workmen's compensation act. (R. S. 1930 Supp. 44-505.) Although the defendant had pleaded that the plaintiffs had an adequate remedy under the provisions of that act, the facts shown by the evidence justified the court in determining as a matter of law that in pulling the hedge neither George F. Peters nor the defendant was working under the workmen's compensation act, and the court was justified in refusing to submit the determination of that question to the jury.

2. The defendant says that the court committed error "in permitting the plaintiffs' attorneys, on the *voir dire* examination of the jury, to ask the jurors if they were stockholders or policyholders in an insurance company; in overruling defendant's written objection to such questions; and defendant's motion to discharge the jury." This complaint concerns the following questions which were asked of each juror:

"Q. Are you a stockholder in any insurance company that has for one of its objects the insuring of employees against accidental injury or death to its employees?

"Q. Are you a policyholder in any insurance company which has for one of its objects insuring claims against accidental death of its employees?"

We quote from the abstract of the appellant as follows:

"Before the jury was empaneled, attorneys for defendant dictated into the record an objection to counsel for plaintiff asking the jurors if they were stockholders in an insurance company that had for its business the insuring of employers against accidental injury or death of its employees, or if they were policyholders in any insurance company which insured against accidental death.

"This objection was dictated in the form of a motion and advised the court in substance that The Ocean Accident and Guarantee Corporation, Ltd., of London, England, had insured the defendant against claims arising under the workmen's compensation act. That that insurance company was a foreign corporation and had no stockholders or directors in the state of Kansas.

"The court overruled the motion of the defendants and permitted attorney for the plaintiff to ask each of the jurors the questions as to whether or not they were stockholders or policyholders in an insurance company that insured employers against accidental death of its employees."

This practice has been under consideration several times. (*Swift*

*v. Platte,* 68 Kan. 1, 72 Pac. 271; *Howard v. Motor Co.,* 106 Kan. 775, 777, 190 Pac. 11; *Smith v. Ice and Delivery Co.,* 117 Kan. 485, 490, 232 Pac. 603; *Engle v. Bowen,* 122 Kan. 283, 251 Pac. 1108.) In each of these cases the practice was criticized, but in none of them was the judgment reversed, the court declaring that the decision of the trial court concerning the good faith of the questions asked was final. It should be noticed the statement dictated into the record by counsel for the defendant concerned the only insurance company interested in this litigation. The questions asked concerned the interest of the jurors in any insurance company having for its object insurance against accidental injury to or death of employees. Following the rule declared in the cases cited, this court is unable to say there was reversible error in permitting the questions to be asked of the jurors.

·3. Another matter urged by the defendant is that the court committed error "in permitting, over the objection of defendant, a number of witnesses to testify as to the nature of the deceased's injuries, and his pain and suffering, when pain and suffering were not proper elements of damage." To show what took place on the trial we quote from the testimony of the mother of George F. Peters, as shown in the abstract of the appellant, as follows:

"Q. Did you have an opportunity to observe the nature of the boy's wounds? A. I did.

"Q. Describe his wounds . . . A. There was big hole in his side. It was about that long (indicates) cut right across the top of his hip and there was a big hole there and his hand was broke.

"Q. Which hand? A. If I remember, the right.

"Q. Did you notice any other bruises on the body? A. No. His body was all covered with blood; on the way over there we tried to lay him down in the car, but he was in such pain we couldn't help him. (The witness breaks down and weeps.)

"(The witness retires to the judge's chambers to regain her composure, assisted by her daughter. The witness then returned to the witness chair.)

"Q. How long was it after his injury until he died? A. I think it was about twenty-five hours.

"Q. He died the next day? A. Yes, between four and five o'clock. I had a conversation with Mr. Cavanah at the hospital. . . .

"Q. Did he say anything else? A. He asked me how it happened. I told him to ask Morris. Morris was there and Morris told him the hook straightened out. I had my mind on the boy. (The witness weeps.)"

The plaintiffs contend that evidence of the injuries sustained by George F. Peters was introduced for the purpose of showing the

force with which he was struck by the sweep, which evidence in turn tended to prove the dangerous occupation in which he was engaged and the necessity for a high degree of care on the part of the defendant in operating the stump puller. Conduct of this kind was severely criticized in *Stroup v. Northeast Oklahoma Rld. Co.*, 122 Kan. 587, 253 Pac. 242, but the judgment in that case was not reversed; the amount was reduced. The testimony concerning pain and suffering should not have been admitted, but the amount of the verdict, $8,000, $2,000 less than the statutory maximum, shows that no prejudice resulted to the defendant by reason of that evidence.

4. Defendant argues that the court committed error "in failing to submit instructions requested by defendant, and in giving improper, prejudicial and complicated instructions which the jury could not understand." The defendant requested fourteen different instructions. After stating the issue, the court gave thirty different instructions besides the general instruction concerning weight of evidence, credibility of witnesses, etc. In his specifications of errors the defendant says:

"The court erred in giving to the jury each and all of the following instructions: 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26."

The defendant in his brief does not point out wherein any one of the instructions given was erroneous, nor wherein the court committed error in failing to give any requested instructions. To show the nature of the complaint of the defendant concerning the instructions, we quote from his brief, as follows:

"Beginning at instruction No. 8 and continuing through instruction No. 12, they are mere repetitions, one of the other, all of which are without sufficient qualifying explanation, imposing all duties on the appellant and none upon George Peters. In instruction No. 15 the court laid down a duty on the part of the employer, Cavanah, which is erroneous in that it requires him to make careful and skillful inspection and repairs."

Instruction No. 15 has been examined, and the court is unable to perceive wherein that instruction laid on the defendant any duty except that imposed by the law. All the instructions have been examined, and the court is unable to discover any reversible error in any of them.

5. The last complaint set out in the brief of the defendant is that the court committed error "in refusing to sustain defendant's demurrer to plaintiffs' evidence, and to direct a verdict in favor of

the defendant at the close of the testimony, because the plaintiffs failed to prove any negligence on the part of the defendant which was the proximate cause of the death of George Peters." The plaintiffs did introduce evidence which tended to prove negligence on the part of the defendant in using a chain with a weak hook, in failing to warn George F. Peters of the dangerous character of the work in which he was engaged, and in using a stump puller with defective braking apparatus. This complaint of the defendant cannot be sustained.

The judgment is affirmed.

BURCH, DAWSON and HARVEY, JJ., dissenting.