[Nos. 29562, 29563. Department One: July 20, 1945.]

OLIVINE V. ALEXANDER, *Appellant*, v. WILLIAM J. RANDISH, *Respondent*.[1]

*Ronald W. Meier*, for appellant.

*P. O. D. Vedova*, for respondent.

*Charles H. Paul, amicus curiae.*

MILLARD, J.—Olivine V. Randish was granted an interlocutory decree of divorce from William J. Randish, April

[1] Reported in 160 P. (2d) 1017.

10, 1942. The court found that the plaintiff and defendant were temperamentally incompatible; that defendant husband had for many years treated plaintiff wife cruelly and had rendered the life of plaintiff burdensome to her, by reason of which it was no longer possible for the plaintiff and defendant to live together as husband and wife. The interlocutory decree awarded the custody of the two and one-half year old child of the parties to the wife, granting to the husband rights of visitation as follows:

"It is further ORDERED, ADJUDGED and DECREED that until the further order of the court the plaintiff shall have the sole custody and care of the minor child of plaintiff and defendant, subject to the right of the defendant to have the said minor child with him on Sundays and Christmas Day and when said minor child is of school age to have her with him during regular school interim vacations and for two months during the regular summer school vacation and it is further ordered, adjudged and decreed that in the event either of the parties hereto shall remove from the city of Seattle, Washington, then that party so removing shall pay and bear all of the expense of the transportation of said minor child to and from visiting the other party in accordance with the terms and conditions set forth in this paragraph."

Final decree of divorce was entered October 13, 1942.

A little more than two years subsequent to the entry of the interlocutory decree or twenty months after the final decree was entered, plaintiff married Clifford Alexander, a warrant officer in the United States navy, who was following the navy as a permanent career, having worked his way from enlisted man to the rank of warrant officer. Plaintiff was not acquainted with her second husband, who had been in the navy seven years, prior to the time of her divorce from defendant.

Mr. Alexander has been ordered to Boston, where his tour of duty will be for three years. Mr. Randish filed September 20, 1944, in the superior court for King county, an affidavit that plaintiff had remarried a man in the United States naval service, who had been ordered to report to Boston, and it was the intention of plaintiff to join her hus-

band in Boston and remove the child from the jurisdiction, thereby depriving defendant of the right of visitation with the child as provided in the interlocutory decree quoted above. On defendant's petition therefor, an order was issued *ex parte* September 20, 1944, requiring plaintiff to show cause why she should not be permanently restrained from removing the child from the jurisdiction of the court. Prior to hearing on the order to show cause, plaintiff filed a petition for modification of the decree of divorce to permit her to take her child to Boston.

Superior court Judge Long, before whom the order to show cause procured by defendant came on for hearing, refused to hear counsel for plaintiff on either the facts or the law and expressed the conviction that a restraining order should issue. We quote the following excerpt from the statement of facts:

"MR. VEDOVA: On your Honor's calendar this morning is the case of Randish vs. Randish. On behalf of defendant I am asking for a restraining order to restrain plaintiff from taking from the jurisdiction of the court the minor child of the parties hereto, and Mr. Anderson has filed a petition to modify the Interlocutory Decree. I understand it is your Honor's practice to set such petitions down for special hearing at a date fixed by the court. JUDGE LONG: That is the ruling. MR. ANDERSON: In this case the husband of plaintiff is a warrant officer in the United States Navy and has been ordered to report to the Boston Navy Yard on October 24, 1944. He wishes to be heard, and I ask your Honor to give us an early date so that this officer can testify before he leaves Seattle. I think the hearing would not take much time, and principally this matter involves questions of law. JUDGE LONG: (thumbed rapidly through the file on the bench and inquired) What was done upon the former petitions filed last year? MR. VEDOVA: They were denied, but no formal order was entered. JUDGE LONG: I think a restraining order should issue. I am opposed to officers of the army or the navy gallivanting around the country carrying their wives and children with them. MR. ANDERSON: I think every officer in the army and navy would resent your Honor's statement. JUDGE LONG: You imply I am unpatriotic. MR. ANDERSON: No."

Plaintiff's counsel stated he would like to be heard, as he had opinions from this court which he would like to present. The court stated that the petition to modify the interlocutory decree did not state facts sufficient to constitute a cause of action or to warrant relief, but that plaintiff might amend her petition if she so desired.

On October 17, 1944, defendant appeared before superior court Judge Long and presented a formal order restraining removal of the child to Boston. At the same time, the order to show cause on plaintiff's amended petition to modify the divorce decree came on for hearing. Judge Long stated, after reading the amended petition:

"I think the amended petition is sufficient and requires a hearing before the court. I will sign the restraining order. The court always has power to enter an order when a child is involved. You can file a petition the next day after an order is signed and bring it up again. The question is always open. I think the objection to the jurisdiction was waived by failure to object when you were here last week."

When plaintiff's counsel objected to the signing of the restraining order, the following occurred:

"JUDGE LONG: I have indicated that I would sign the restraining order, and I am going to sign it. You have your remedy. MR. ANDERSON: When I was here last week you would not hear me on either the facts or the law. You won't hear me today. JUDGE LONG: I am going to sign the restraining order, and I will not hear the petition to modify the Interlocutory Decree. I am going to send this case back to the presiding Judge. MR. ANDERSON: I did not want to ask you to do that myself, but I am very glad that you are going to take that action. JUDGE LONG: That will be satisfactory to you, Mr. Anderson, will it if I send your petition back to the presiding Judge, who will assign it to some other judge for hearing? MR. ANDERSON: Yes."

The formal order permanently restraining removal of the minor child of the parties from the jurisdiction of the court was then signed by Judge Long.

Plaintiff's amended petition to modify the decree of divorce came on for hearing before superior court Judge Lawler October 18, 1944. Defendant's demurrer to the

amended petition was overruled, and the testimony of Clifford Alexander, husband of plaintiff, was taken and the case was continued on call.

Plaintiff gave notice of appeal November 15, 1944, from the restraining order entered by Judge Long October 17, 1944. On December 1, 1944, hearing was resumed before superior court Judge Lawler on plaintiff's amended petition to modify the decree of divorce, and evidence was adduced on behalf of both parties.

At the conclusion of the hearing, when the court was ready to determine the issue upon its merits, defendant renewed his challenge made at opening of the case to the jurisdiction of the court to hear the matter, in view of the fact that plaintiff had appealed from the restraining order entered by superior court Judge Long. The challenge was sustained, and formal order dismissing the amended petition was entered December 21, 1944. Timely appeal was taken therefrom.

The entry of the order permanently enjoining appellant from removing her minor child from jurisdiction of the court, and the dismissal (without passing on the merits of same) of appellant's amended petition for modification of the decree of divorce, are assigned as errors.

Counsel for appellant concedes that the court has authority in divorce actions to grant restraining orders to protect the parties; that is, to preserve the *status quo* temporarily until an order more permanent in character may be entered. It is insisted, however, that it constitutes a denial of due process of law to enter a permanent injunction, as was done in the case at bar, in the absence of a hearing upon the facts and the law.

It is inferable from the record, quoted above, that the trial court was of the view that to permit a wife to accompany her husband, even if he were following the navy as a permanent career, would be to countenance the roaming about of such couple for pleasure. The statement of the court that "I am opposed to officers of the army or the navy gallivanting around the country carrying their wives and children with them" was irrelevant and unwarranted.

The trial judge, doubtless deeming himself disqualified to pass upon the merits of the cause by reason of his gratuitous assumption concerning servicemen "carrying their wives and children with them," and cognizant of the rule that, in the absence of a hearing on the application for a restraining order, the court was without authority to grant a permanent injunction, signed the restraining order prepared by counsel for respondent, and referred appellant's amended petition for modification of the divorce decree to the presiding judge for assignment. The trial judge stated:

"I am going to sign the restraining order, and I will not hear the petition to modify the interlocutory decree. I am going to send this case back to the presiding judge."

Trial of the cause, which was assigned to superior court Judge Lawler for trial, resulted in dismissal of the petition, as stated above, on the ground of lack of jurisdiction because of pending appeal from order granting permanent injunction.

■ There is no magic in the names "injunction," "restraining order," "temporary injunction," or "temporary restraining order." The naming of the restraining order as a "permanent injunction" was clearly an inadvertence. The records manifestly disclose that the only purpose of the trial court was to preserve the *status quo* until hearing of the cause by another trial judge to whom it would be assigned by the presiding judge.

■■ The appeal from the temporary restraining order is a nullity. The trial judge to whom the cause was assigned, after the first trial judge had entered a temporary restraining order and returned the cause to the presiding judge for assignment, erred in dismissing the amended petition without passing upon the merits.

The judgment is reversed, and the cause remanded for trial on the merits.

BEALS, C. J., STEINERT, JEFFERS, and GRADY, JJ., concur.