No. 37,315

Lucio Rivas Campos, *Appellee,* v. The Garden City Company, *Appellant.*

(201 P. 2d 1017)

Opinion filed January 22, 1949.

*A. M. Fleming,* of Garden City, argued the cause, and *William Easton Hutchison, C. E. Vance* and *Bert J. Vance,* all of Garden City, were with him on the briefs for the appellant.

*William E. Scott,* of Kansas City, argued the cause, and *Ben E. Pener,* of Kansas City, Mo., was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a workmen's compensation case. The plaintiff prevailed and defendant appeals.

A general outline of the facts will be sketched and material details will be treated under specific contentions.

Respondent, The Garden City Company, was engaged in the beet-sugar *manufacturing* business. Respondent applied to the workmen's compensation commission to be permitted to become a self-insurer under the provisions of the compensation act. Before the application was granted the commissioner of workmen's compensation required respondent to file its election to be governed by the provisions of the act. The manufacturing company complied. The election discloses its business was "sugar manufacturing, electric distribution and irrigation." It distributed current through The Garden City Irrigation Company, a subsidiary corporation.

The claimant was not employed in either of the industries designated in the election and was not injured in any hazard arising therefrom. He was injured while working in an agricultural pursuit on land leased by respondent to one of its tenants. While separating beets in the field claimant became thirsty and went to the end of the field to get a drink of water. The water can was empty and claimant placed it onto the tenant's truck. On his way back he came in contact with an electric wire and was injured.

Respondent had other interests than manufacturing. It was also engaged in extensive farming operations. It raised beets and other crops on its own farms consisting of approxmiately 25,000 acres of land. The farms were leased to tenants on written contract. Respondent retained the right to supervise the planting, cultivating, irrigating, harvesting and delivery of the beets. It retained title to the beets until they were divided according to terms of the contract. Other rights and powers retained, if material, will be considered under appropriate subjects. Respondent's share was delivered to its factory for processing into sugar.

During the war and due to a shortage of agricultural labor the production and marketing administration, labor branch, of the federal government contracted for Mexican workers to be brought into the United States. Respondent in turn contracted with the government for Mexican labor. It released some, perhaps all, of these men to its tenants. In order to obtain these imported workmen respondent agreed with the government to be responsible for their wages. By agreement with the tenant respondent paid claimant his weekly wages when due and was reimbursed by the tenant. Claimant, one of these workmen, was injured in the manner previously indicated. The commissioner awarded compensation. From the affirming decree of the district court respondent appeals.

The only material finding of the district court is that claimant was in respondent's employ at the time of the accident from which claimant suffered injuries arising out of and in the course of his employment.

Respondent contends (1) claimant was injured while laboring in an agricultural pursuit which our compensation act exempts from its operation, and (2) respondent did not elect to place its agricultural pursuit under the act.

We shall treat the contentions in the order stated: that claimant was not injured while working in the beet factory, in the distribu-

tion of electricity or in an irrigation project is conceded. That he was injured while working in an agricultural pursuit is clear. G. S. 1935, 44-505 provides:

"Agricultural pursuits and employments incident thereto are hereby declared to be non-hazardous and exempt from the provisions of this act. . . ."

We have held that where an employer is engaged in a trade or business subject to the act and also in an agricultural pursuit in which his workman sustains an accidental injury such injury is not compensable under the act. (*Peters v. Cavanah*, 132 Kan. 244, 295 Pac. 693; *Taylor v. Taylor*, 156 Kan. 763, 137 P. 2d 147.)

In other words, barring an election to come under the act, liability is determined by whether injury results from a trade or business covered by the act. (*Setter v. Wilson*, 140 Kan. 447, 37 P. 2d 50; *Shrout v. Lewis*, 147 Kan. 592, 77 P. 2d 973; *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430; *Giltner v. Stephens*, 163 Kan. 37, 180 P. 2d 288.)

Claimant seeks to escape the effect of the agricultural exemption provision on the theory respondent's agricultural pursuit was a part of its general, or ordinary, business of manufacturing. It should be noted the legislature in stating to what the act applies does not classify employees by the *general or ordinary* trade or business of their employer but by employment in specified hazardous trades or business. It then declares that agricultural pursuits and employments incident thereto are nonhazardous and expressly exempts them from the provisions of the act.

Courts do not inquire into the motive or wisdom of legislation. Such considerations are solely the province of the lawmakers. The duty of courts is to make the legislative will effective wherever reasonably possible to do so. It is not contended the legislature was without power to make the indicated classifications. We are, therefore, concerned only with the fact such classification exists. In *Pestlin v. Haxton Canning Co.*, 80 N. Y. S. 2d 869, 274 App. Div. 144, to which we shall again refer, it was aptly declared:

"The clear and definite legislative purpose to exclude farm laborers from benefits of Workmen's Compensation Law must not be whittled away by strained construction or false findings." (Syl. ¶ 3.)

Attempts to by-pass the legislative will pertaining to the exemption of employment in agricultural pursuits on the theory such pursuits are a part of the *general, or ordinary*, business of the employer, where another or so-called major business of the employer is under

the act, have been denied in well-considered cases, some of which are strikingly similar to the instant one. The real test of liability in such cases has been declared to be the actual nature of the work being done at the time of the injury. A few of these cases are *Pestlin v. Haxton Canning Co.*, supra, (1948); *Evansville Veneer & Lumber Co. v. Mullen*, 116 Ind. App. 616, 65 N. E. 2d 742 (1946); *Melendez v. Johns*, 51 Ariz. 331, 76 P. 2d 1163, (1938); *Ocean Acc. & Guar. Co. et al. v. Ind. Comm. of Utah et al.*, 69 Utah 473, 256 Pac. 405, (1927); *Shafer v. Parke, Davis & Co.*, 192 Mich. 577, 159 N. W. 304 (1916). See, also, cases therein cited.

As previously indicated claimant in the instant case was employed solely in an agricultural pursuit but the last cited authorities recognize that an employee may work in a dual capacity and be covered by the act when engaged in one capacity and excluded when engaged in another, such as agriculture, depending on the nature of the work being performed at the time of injury. Manifestly, the mere incident of respondent's ownership of the land on which the beets were raised or the fact respondent also operated a beet manufacturing business did not change the essential character of the work claimant was actually doing. Claimant was in nowise out of character in the performance of agricultural work. So in the Michigan case, *supra*, it was held:

"Any man employed to work on a farm and to perform the work ordinarily done there is a farm laborer: the statute does not classify the employee by the ordinary business of his employer, but by the kind of work he himself is employed to do: hence, a corporation engaged in the business of manufacturing and selling chemicals, serums, bacteriological products, machines, boxes, cartons; in publication and printing, etc., having a research department, an experimental department, law department, and farm, was not liable under the workmen's compensation act to an injured employee working on the farm maintained by the company, which was principally conducted for the producing of serums for the chemical factory and laboratory." (Syl. ¶ 2.)

In the Arizona case, *supra*, claimant was a lettuce picker. Respondents were the purchasers and shippers of the harvested crop. Claimant was an assistant to one whom respondents had hired to harvest the crop. The respondent shippers were within the compensation act. Claimant was injured and claimed compensation on the theory he was an employee of the shippers. The court denied the claim, and held:

"The test to determine whether an employee is barred as an agricultural worker from recovering compensation under the Workmen's Compensation

Law is the work actually performed by the employee, and not the general occupation or purpose of the employer." (Syl. ¶ 3.)

In the course of the same opinion it was stated:

"A person whose general business is that of a manufacturer, merchant, banker, or other trade or occupation covered by the Workmen's Compensation Act, has the same right to also engage in agricultural pursuits, and while so engaged in an agricultural occupation should be, and we are of opinion is, subject to the same law as a person who makes agriculture his exclusive occupation or business. This principle is well established by numerous adjudicated cases, among which the reader is referred to the following: [citations]." (p. 345.)

Likewise it was held in the Indiana case, *supra*, that the question whether a workman was employed in agricultural work or in the lumber business of the respondent must be determined from the character of the work in which he was injured and not from the general occupation or business of the employer.

In the recent and strikingly similar New York case, *supra*, it was held:

"Where claimant was employed by tenant to help harvest beets to be delivered to landlord, fact that landlord also operated a canning factory which was landlord's main interest would not entitle claimant who did no work at canning factory to compensation for injuries, even if claimant was an employee of landlord." (Syl. ¶ 5.)

Claimant also, in effect, urges the agricultural exemption provision should not be applied where the agricultural product from respondent's farm is used by respondent in his manufacturing trade or business. It has been seen the same contention was made, without success, in some of the cases previously cited. The motive, purpose of farming or the use to which an agricultural product may later be put is not the test under the exemption provision of our act. It contains no exceptions and we are not permitted to nullify the clear legislative intent by reading exceptions into it. To adopt claimant's contention would violate the act and also lead courts into endless difficulty. For example, in the Utah case, *supra*, the workman devoted part of his time to agricultural work on land which respondent purchased primarily for its value as a sand and gravel bed. Excavation work was done by horsepower. On behalf of the beneficiaries of the workman it was contended the alfalfa hay he was raking when struck by lightning was all fed to the horses used in an industrial pursuit covered by the compensation act. In denying the claim under its act the court held:

"Where employer's general business was marketing sand and gravel, which was covered by Workmen's Compensation Act, mere fact that hay raised on alfalfa land which employee was raking when killed by lightning was fed to horses used in operating sand and gravel beds did not entitle deceased's dependents to compensation. . . ." (Syl. ¶ 6.)

In the Michigan case, *supra,* the industrial accident board held that since the farm was principally conducted to produce serums for the chemical factory and laboratory the defendant company should not be classed as a farmer with respect to its agricultural pursuit. In overruling that decision of the board the Michigan court concluded:

"And any attempt to classify the employee through a consideration of the uses for which the produce of the farm is designed would lead to endless confusion." (p. 581.)

On behalf of claimant it is also argued the agricultural pursuit was an incident to the manufacturing business. Assuming the vast and extensive farm operations of respondent did not constitute a distinct occupation or pursuit and were a mere incident to manufacturing, an assumption unwarranted by the record presented, the incident remained an agricultural pursuit which is exempt from the provisions of the compensation act.

Claimant leans heavily on *Stager v. Sinclair Refining Co.,* 143 Kan. 517, 54 P. 2d 969; *Kennerly et al. v. Ocmulgee Lumber Co. et al.,* 206 S. C. 481, 34 S. E. 2d 792, and among other cases also cites *Mendel v. Fort Scott Hydraulic Cement Co.,* 147 Kan. 719, 78 P. 2d 868.

Although we have carefully examined all cases cited we think only those three require our attention. The Stager case, if otherwise controlling, does not support claimant's contention. The question of our agricultural exemption provision was not there involved. In the Mendel case, to which we shall later refer, both respondents were within the act. No exemption provision was involved. Claimant cites no cases involving our agricultural exemption provision.

In the South Carolina case, *supra,* the respondent lumber company was engaged in sawmill and logging operations which, under the facts, the court held were substantially and necessarily conducted as a single business. Respondent had elected to come within the provisions of the compensation act insofar as sawmill operations were concerned but not as to logging operations, neither of which, absent an election, were within the act. The court concluded respondent

could not elect to include some of its employees in a single business and exclude others in the same business. This court is in harmony with that rule where the employer is engaged in a single trade or business. (*Schroeder v. American Nat'l Bank,* 154 Kan. 721, 725, 121 P. 2d 186.)

The insurance policy in the South Carolina case, in substance, covered all sawmill operations necessary, incident or appertaining thereto or connected therewith irrespective of place of work. Respondent had hired a contractor to cut the timber on its lands and to deliver it to the sawmill. The contractor employed a workman to assist and the latter was killed in logging operations. The commission allowed compensation which the court of common pleas affirmed. On appeal respondents, appellants, presented their case on the theory the sawmill and logging operations were in substance and effect conducted as one business. On that theory the case was affirmed. The decision rests on the ground there was a single business and that under a subcontractor's statute respondent was liable for injuries to the workmen of the subcontractor who had no insurance coverage.

There is no admission in the instant case that respondent's extensive farm operations, including the raising of beets and other crops, and the manufacturing business were substantially or necessarily operated as a single business. The record presented to this court does not warrant a finding or conclusion the respondent corporation was conducting only one trade or business. On the contrary it appears it was conducting four, namely, manufacturing, electric distribution, irrigation and extensive farm operations. Nor is the case presented here by appellant on the theory respondent's tenant was a subcontractor.

On the subject of the immateriality of the purpose of maintaining a farm as an auxiliary to another enterprise or the use to which an employer devotes the proceeds or products derived from his farm, see 71 C. J., § 92, p. 377. For instructive annotations on the related subject of when employees are engaged in farming, see 107 A. L. R. 977 and 140 A. L. R. 399.

It is, however, further argued on behalf of claimant that respondent is liable because claimant was its employee. Studious analysis of the entire record might justify the conclusion respondent was claimant's general employer and the tenant was his special em-

ployer. (*Mendel v. Fort Scott Hydraulic Cement Co.,* supra.)
Giving the record an interpretation most favorable to claimant and
assuming it discloses respondent was claimant's general employer, he
was such employer only with respect to its agricultural pursuit. As
already shown that fact would not make the injury compensable
unless respondent had elected to bring its agricultural pursuit
within the act.

Respondent, in substance, first contends that in view of the fact
G. S. 1935, 44-505, expressly excludes agricultural pursuits and em-
ployments incident thereto "from the provisions of this act," and the
election provision is a part of the act, respondent could not elect to
come within it. We are not inclined to agree but a positive ruling on
that contention, as will presently appear, is not required in this case.

Respondent next contends it did not elect to be bound by the act
with respect to its agricultural pursuits. That contention appears
to be well taken. The burden of showing respondent's agricultural
pursuits were within the act, notwithstanding the exemption pro-
vision, was, of course, on the claimant. (*Ocean Acc. & Guar. Co. et
al. v. Ind. Comm. of Utah et al.,* 69 Utah 473, 256 Pac. 405; *Harper
v. Lowe,* 272 Mich. 331, 262 N. W. 260.) There was no oral testi-
mony on the subject of such election. The election filed with the
commissioner of compensation was executed by the respondent cor-
poration. Even though respondent's application to be permitted to
become a self-insurer is considered in conjunction with and in aid of
the instrument of election, it discloses respondent elected to come
within the act only for all employees in every trade or business
designated in the election. They were espressly designated as
"sugar manufacturing, electric distribution and irrigation." That
election bound respondent as to all employees in the specified em-
ployments. (*Schroeder v. American Nat'l Bank,* supra.) It did
not, however, bind it with respect to employees engaged solely in
agricultural pursuits. (*Ocean Acc. & Guar. Co. et al. v. Ind. Comm.
of Utah et al.; Shafer v. Parke, Davis & Co.; Pestlin v. Haxton
Canning Co.,* omnia supra; *Paradis Case,* 127 Maine 252, 142 A.
863; *State, ex rel. Marshall, v. Roesch,* 108 Or. 368, 216 Pac. 749;
71 C. J., § 263.

In the Michigan case, *supra,* the acceptance of the employer to
bring its employees within the act was a general acceptance. The
court concluded such acceptance was insufficient to bring within the
act employees in an exempt agricultural pursuit and said, "To bring

such employees within [the act] the acceptance must be held to require an express statement to that effect." (p. 583.)

Other cases hold the election in order to include agricultural employees must clearly disclose an intention to do so. We think that must be, and is, the established rule. Many of our prosperous farmers are engaged in trades or business within the act and perhaps in some others outside the act. Any intention to also bring all of their agricultural employees within the act should clearly appear. From the record before us it does not clearly appear respondent intended to bring its agricultural employees, if any, within the act.

The judgment must be reversed. It is so ordered.