No. 47,807

Mr. and Mrs. Cecil M. Stonecipher, *Appellants,* v. Winn-Rau Corporation, *Appellee.*

(545 P. 2d 317)

Opinion filed January 24, 1976.

*Robert E. Fabian,* of McAnany, Van Cleave and Phillips, of Kansas City, argued the cause, and *Bill E. Fabian* of the same firm was with him on the brief for the appellants.

*Richmond M. Enochs,* of Wallace, Saunders, Austin, Brown and Enochs, of Overland Park, argued the cause, and *Morris J. Nunn,* of Morrison, Hecker,

Curtis, Kuder and Parrish, of Kansas City, Mo., was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: In this wrongful death action brought by the parents and heirs at law of a deceased employee against the employer the question is ,whether the decedent and the employer were subject to the provisions of the workmen's compensation act. The district court held they were and plaintiffs have appealed from the dismissal based upon that ruling.

The. dismissal derives from the fact the surviving kin of a deceased workman, whose employer is operating under the workmen's compensation act, may not maintain a common law action for damages against such employer. Their exclusive remedy is that provided by the workmen's compensation act (K. S. A. 44-501; *Spade v. VanSickle*, 175 Kan. 557, 265 P. 2d 860).

The facts on the issue were stipulated in the trial court. Beginning in 1967 appellee Winn-Rau Corporation engaged in the construction, rental and maintenance of various properties such as duplexes, townhouses and shopping centers. One of these developments was Parkway 103 where decedent John Ray Stonecipher was employed. As the construction of each of the properties was completed, appellee continued to own, rent, manage and maintain them. All phases of new construction were completed during the year 1971. During 1972 appellee was not engaged in any new construction and employed no carpenters for that purpose. The only carpentry activities done by it during that year were. those required to repair and maintain the rental properties.

John Ray Stonecipher was employed by appellee as an outside maintenance man on April 5, 1972. He did yard work primarily until the explosion May 9, 1972, which caused his death. The. building in which the explosion occurred was owned by appellee and was used as a combined office for it and club facilities for the tenants of Parkway 103. Immediately prior to the explosion decedent had been cutting grass and had entered the building for some undisclosed reason.

In 1967 appellee had filed a prescribed election form with the workmen's compensation director, purporting to bring its employees within the provisions of the workmen's compensation act. The election form stated that appellee was engaged in the business of "carpentry." No other elections or amendments to that election

have been filed either by the appellee or the decedent and it was never changed or revoked. In 1967 the director's election instructions contained on the form provided in part as follows:

"IN ALL CASES

"The address of employer and the business in which such employer is engaged must be given. *This election will cover all of the business operations of the employer,* and any future business locations established within the state of Kansas *in the type of business named herein.*" (Emphasis supplied.)

The election form together with the quoted instructions were included in the rules of the workmen's compensation director in effect in 1967 (KAR 51-1-10). During the years 1967 through 1972 appellee carried workmen's compensation insurance with an insurer approved by the state department of insurance. The policies provided coverage for all categories of appellee's employees who were under the act. Those categories were set out in the policy. The amount of premiums paid on such coverage was governed by the nature of the particular work and the salaries paid to various employees. The premium assessment was estimated initially and thereafter finally determined by an annual audit by the insurer of appellee's records of wages paid in each of the designated classifications of employment. Appellee paid salaries and wages in 1972 to employees engaged in maintenance, repair and management of appellee's rental properties, including those of corporate officers, clerical workers, office employees and outside salesmen engaged in the rental and leasing of properties. The wages paid to John Ray Stonecipher were included in the 1972 audit which determined appellee's insurance premium for that year. His job classification for this purpose was "Building N. O. C." (In insurance parlance N. O. C. means "no other classification".)

In 1969 the workmen's compensation director distributed new election forms to all insurance companies writing workmen's compensation insurance coverage in Kansas. The new election form instructions provided in part as follows:

"IN ALL CASES

"The address of the employer and the specific nature of the employer's business to be covered must be given. This election shall govern only the specific employments set forth herein, and shall apply to all present and future business locations established by the employer within and/or without the State of Kansas."

This change was reflected in an amendment to KAR 51-1-10, made January 1, 1969.

Basically the appeal involves the scope and application of appellee's 1967 election. Appellants' argument essentially is that in 1967 appellee was in the construction business; that fact made it subject to the workmen's compensation act by reason of K. S. A. 44-505 and 44-507 which declared building work hazardous and put all employees so engaged under the act; appellee's 1967 election effected nothing new and was actually a nullity, and after 1971 appellee's business shifted to nonhazardous work and it and its employees were removed from operation of the act. Appellants further contend that if the election be found valid, it was limited to employees engaged in carpentry; decedent was not engaged in carpentry but was in the nonhazardous work of maintenance conducted as a separate business by appellee. Appellants cite in support of this further contention our rulings in *Campos v. Garden City Co.*, 166 Kan. 352, 201 P. 2d 1017, and *Juergensen v. Isern Drilling Co.*, 197 Kan. 804, 421 P. 2d 11, which recognize that an employer may engage in two or more separate and unrelated trades or businesses, some of which may be within the workmen's compensation act while others are not. Appellants further suggest appellee demand return of unearned premiums from its workmen's compensation insurer.

Appellee responds that the trial court correctly ruled its election was not limited but continued and was in effect when the fatal incident occurred and that appellee conducted one integrated business of which decedent's work was a part and upon whose behalf it paid premiums for compensation coverage.

Our workmen's compensation act is designed to insure an efficient and uniform method of compensating employees who suffer designated injuries arising out of and in the course of their employment (K. S. A. 44-501, *et seq.*, since amended). K. S. A. 44-505, in effect during 1972, provided:

"This act shall apply only to employment in the course of the employer's trade or business in the following hazardous employments: . . . building or engineering work . . . and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, each of which employments is hereby determined to be especially dangerous.

. . .

". . . *Provided*, That . . . those employers whose work, trade or business is not such as described and included in this section of this act . . . may elect to come within the provisions of this act by filing with the workmen's compensation director a written statement of election to accept thereunder . . . and such election shall be effective when so filed, and such

election shall continue in effect unless and until such . . . employer thereafter desiring to change such election shall do so by filing a written declaration thereof with the director. . . ."

The director's rule as to the continuing effect of an election is in accord with the last part of the foregoing statute. In pertinent part it provides:

". . . An election to come within the provisions of the act, having been filed with the director, continues in effect until such election is cancelled by the employer. . . ." (KAR 51-13-1.)

In determining matters such as that at issue here this court is firmly committed to the rule that the provisions of the workmen's compensation act are to be liberally construed in favor of the workman and compensation awarded where it is reasonably possible to do so (*Odell v. Unified School District,* 206 Kan. 752, 756, 481 P. 2d 974). However, "Consistency of decisions involving interpretation of the workmen's compensation act cannot be maintained by construing the act liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages" (*Bright v. Bragg,* 175 Kan. 404, Syl. ¶ 7, 264 P. 2d 494; see also *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 268, 160 P. 2d 701).

Although no case precisely in point has been found we believe appellee's position is sound and that its election was in full force and effect at the time in question with respect to decedent as ruled by the trial court. In 1972 K. S. A. 44-508 '(f) defined "building work" as follows:

" 'Building work' means any work in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances."

Clearly appellee, from 1967 until some time in 1971 when its new construction ended, was doing building work within the meaning of the act and its employees so engaged were automatically covered. However, in 1967 appellee filed its election to operate under the act. In that election it described its business as "carpentry". That election was never changed by any written declaration filed with the director and under K. S. A. 44-505 and the director's corresponding rule it continued in effect. By reason of that filing appellee's employees become subject to the act since that election covered "all of the business operations" carried on by it wherein carpentry was involved. In 1967 it was engaged in the construction, rental and maintenance of various properties. The parties stipulated

that "The ownership, rental, operation, and maintenance of these completed properties included all aspects of inside maintenance work and repair to the structures involved plus outside maintenance work and repairs to the structures involved and maintenance of the yard and parking areas surrounding them"; also that, "The ownership, operation and maintenance of these properties included all aspects of the maintenance and repair of the inside of these building structures and the outside of the structures and maintenance of the yard and parking areas surrounding each of these structures"; further that, "Included in the operation and maintenance of this property were all aspects of the maintenance and repair of the inside of the structure plus all aspects of the maintenance and repair of the outside of the structure and maintenance of the yard areas upon which the property was located"; and further, "In the year 1972, Winn-Rau corporation was not engaged in new construction projects, employed no carpenters for that purpose, and was not engaged in carpentry relating to any new construction. The only carpentry activities done by Winn-Rau in that year were those undertaken in the repair and maintenance of its existing properties. As such, they were classified under 'Building N. O. C.' as maintenance and repair activities for audit purposes. For example, following the fire and explosion involved in the present action, Winn-Rau paid its employees to undertake repair work on the damage incurred which included carpentry work."

Thus appellee in 1972 was engaged in maintenance and repair of its properties, in which carpentry was involved, as it had been since the year 1967. Its operations were the same as in 1971 and prior years except that it had completed its new construction operations and was now owning, leasing, operating and maintaining all the properties it had built instead of just part of them. Appellee's various operations obviously had become so commingled and inter-related as to lose their separate and distinct character, unlike the situations in *Campos* and *Juergensen,* and had become a single integrated business. This latter situation was illustrated in *Maryland Cas. Co. v. Sullivan,* 160 Tex. 592, 334 S. W. 2d 783. There the employer operated a fertilizer and chemical business and an aerial crop dusting business. An airplane pilot was killed while dusting crops for the crop dusting enterprise. The employer had secured workmen's compensation insurance coverage on the chemical and fertilizer business only. The court recognized the general rule that where an employer operates two or more distinct businesses, he

is not required to secure compensation insurance for all the employees of both businesses. But the court found that the financing, bookkeeping, management and operation of the two businesses were so interrelated and commingled that they amounted to different phases of the same business—selling and applying chemical insecticides. The court held that the employee was covered by the insurance issued to the company. Two of our own cases can be read to imply, although they do not explicitly say so, that the construction, ownership, repair, maintenance and operation of properties for rent can constitute one trade or business for the purpose of determining application of the workmen's compensation act (*Setter v. Wilson*, 140 Kan. 447, 37 P. 2d 50; *Shrout v. Lewis*, 147 Kan. 592, 77 P. 2d 973).

The general rule is that an employer may not cover a part of his employees with the protection of workmen's compensation and leave a part of them uncovered where such employees are engaged in the same general class of trade or business (see 99 CJS, Workmen's Compensation, § 124, p. 432). Our own decisions are in accord. In *Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186, a bank employed the claimant to do remodeling work in the bank's place of business. This court first determined that claimant was an employee and not an independent contractor, then it concluded:

". . . The bank had elected to come under the workmen's compensation act. . . . Since it was under the workmen's compensation act it could not be under it for some employees and not for others. The liability of respondent is not due to the fact that the work claimant was doing was building work, but that it was incidental to the business of the bank." (p. 725.)

See also *McCarty v. Great Bend Board of Education*, 195 Kan. 310, 403 P. 2d 956.

Where an employer in fact is carrying on a single trade or business consisting of separate but interrelated operations we think the failure to describe the trade or business fully and precisely in an election to come under the workmen's compensation act should not be deemed fatal to the act's application. Fair notice of intent to come within the act is all that is or should be required. Here, carpentry was involved in appellee's business. We think appellee's 1967 election sufficiently brought it and its employees, including the decedent, within the act; that election was never changed and it remained in effect, so as to foreclose this action. Were the shoe on the other foot with appellants applying for compensation we

would be hard pressed to deny that, upon the facts shown here, the parties were governed by the workmen's compensation act (appellants state in their brief they do have such an application pending).

Our conclusion just reached is bolstered by the fact that from 1967 through 1972 appellee maintained workmen's compensation insurance for all its employees, including the decedent while he was employed. K. S. A. 44-532 required that every employer subject to the act insure his liability thereunder with a carrier authorized to transact the business of workmen's compensation insurance in this state, or establish his ability as a self-insurer. Where there is doubt as to the intent of the employer to be under the act the fact of workmen's compensation insurance coverage can be persuasive, although it need not be conclusive, on the issue whether a particular employee is covered. This court recognized the relevance of insurance in *Evans v. Tibbetts*, 134 Kan. 131, 4 P. 2d 399, in which the issue was whether a deceased workman was under the workmen's compensation act of Kansas. We quote from that opinion:

"Appellants contend 'the [workmen's compensation] commissioner had no jurisdiction to litigate or pass upon controversies arising out of insurance policies.' We do not understand from the record that the commissioner attempted to do so. What happened was this: The employers were contending that they were not under the workmen's compensation law. In addition to developing what their business was, which showed them to be under the law, there was introduced in evidence the parts of the insurance contracts which stipulated, among other things, that the employer agreed that he was bound by the workmen's compensation law of Kansas. This was introduced simply as evidence tending to show not only that the parties were under the workmen's compensation law, but that they so represented and agreed and bound themselves. It was competent evidence for that purpose." (p. 134.)

The judgment is affirmed.

APPROVED BY THE COURT.