(760 P.2d 43)
No. 60,922

ALFRED FROST, *Claimant/Appellee*, v. BUILDERS SERVICE, INC., and COMMERCIAL UNION INSURANCE COMPANY, *Appellants/Cross-Appellees*, and KANSAS WORKERS' COMPENSATION FUND, *Appellee/Cross-Appellant*.

Opinion filed August 5, 1988.

*Harry Bleeker* and *Casey R. Law*, of Turner & Boisseau, Chartered, of Great Bend, for appellants/cross-appellees Builders Service, Inc., and Commercial Union Insurance Company.

*Brock R. McPherson*, of McPherson, Bauer, Pike & Pike, Chtd., of Great Bend, for appellee/cross-appellant Kansas Workers' Compensation Fund.

*Randall H. Elam*, of Wichita, and *E. L. Lee Kinch*, of Ratner, Mattox, Ratner, Kinch & Brimer, P.A., of Wichita, for claimant/appellee.

Before ELLIOTT, P.J., GERNON, J., and DAVID W. KENNEDY, District Judge, assigned.

KENNEDY, J.: Builders Service, Inc., (Builders) and Commercial Union Insurance Company appeal from a judgment against them

in a workers' compensation claim. The Kansas Workers' Compensation Fund (Fund) cross-appeals from the judgment and the allocation of a portion of the award to the Fund. The Fund had also appealed from the trial court's finding that Builders had hired and retained Mr. Frost with knowledge of a preexisting impairment. At oral argument the Fund abandoned this issue.

Mr. Frost was employed by Builders. Builders is a general construction company involved primarily in constructing grain storage, farm, and oil and gas buildings. Raymond Strickland is the primary stockholder and president of Builders. According to Frost's supervisor, Peter Barnato, Frost's duties for Builders consisted of "general shop and vehicle maintenance, i.e., vehicle tune ups, cleaning, sweeping, feeding-watering cattle and building fence." Frost usually acted as a foreman on construction jobs.

From time to time Frost did work on Strickland's private farm. Strickland had 180 head of cattle that he raised for profit. Frost considered the farm work part of his regular employment. Frost was paid for the work he did on the Strickland farm as part of his regular paycheck from Builders. Strickland would then reimburse the company for the time spent by Frost at the farm. Builders did not make a profit from the work done on Strickland's farm.

On March 15, 1982, Barnato sent Frost to the Strickland farm to hook up a horse trailer and move some water tanks. During the course of his activity, Frost injured his back. At the time he was injured, Frost was hooking up a horse trailer to take it to a livestock area and move watering tanks to where cattle were feeding.

Frost visited Dr. Roger Ihrig, who diagnosed the injury as a herniated disc. Frost was subsequently released from employment with Builders. A vocational rehabilitation counselor found that Frost was too severely disabled to benefit from vocational rehabilitation treatment and would not be able to obtain competitive employment.

On May 17, 1985, the administrative law judge rendered a decision awarding Frost compensation for medical expenses, temporary total disability, and 90% permanent partial disability. The decision allocated two-thirds of the compensation to the Fund and one-third to Builders. A director's order filed August

21, 1986, affirmed the award. Following a timely petition for judicial review, the district court upheld the award in a journal entry filed May 12, 1987. Builders appeals; the Fund cross-appeals.

It is axiomatic that the Workers' Compensation Act is to be liberally construed to give effect to the legislative intent and to award compensation to a worker where it is reasonably possible to do so. *Poole v. Earp Meat Co.*, 242 Kan. 638, Syl. ¶ 3, 750 P.2d 1000 (1988). However, the court has "no right to extend its construction to cover enterprises and industries not within the scope and intent of the law." *Menke v. Hauber*, 99 Kan. 171, 175, 160 P.2d 1017 (1916).

Builders and the Fund both contend that Frost was not covered by the Workers' Compensation Act at the time of his injury. Their first argument is that Frost was engaged in an "agricultural pursuit" at the specific time of his injury and second, as a matter of law, the Act denies coverage for an injury occurring during the course of an "agricultural pursuit" regardless of the general nature of the employment.

The issue of whether a claimant is involved in an agricultural pursuit is a question of fact and the applicable scope of review is whether substantial evidence supports the district court's judgment. *Whitham v. Parris*, 11 Kan. App. 2d 303, 305, 720 P.2d 1125 (1986). Whether a claimant was engaged in an agricultural pursuit is to be determined on a case-by-case basis. 11 Kan. App. 2d at 305. It cannot be denied that Strickland's farm was an agricultural pursuit and Frost was doing work incident to Strickland's pursuit at the time of his injury.

The director and the trial judge looked to the general nature of Builders' business rather than Frost's activity at the specific time of his injury to conclude that Frost was not engaged in work incident to an agricultural pursuit. Builders and the Fund contend that this was error.

Prior to the 1974 amendments to the Workers' Compensation Act, the Kansas cases had taken two different approaches to this issue. One line of cases suggests that the general nature of the worker's employment is irrelevant.

In *Juergensen v. Isern Drilling Co.*, 197 Kan. 804, 421 P.2d 11 (1966), a worker was employed by an oil drilling company and he worked on drilling operations during the spring and winter.

During the summer and fall he took care of lawns for the owner of the company and was injured tending the lawns. The court held that, even though employment in the oil industry was covered by the Act, the claimant was injured doing activity that was not covered by the Act. 197 Kan. at 808.

In *Peters v. Cavanah*, 132 Kan. 244, 295 Pac. 693 (1931), the claimant's main employment was road and bridge construction, but he was fatally injured while helping his employer pull stumps on a farm. The court held that the work was agricultural and not covered by the Workers' Compensation Act.

A second line of cases suggests that the general nature of the employer's business determines whether the activity resulting in injury was incident to an agricultural pursuit.

In *Shrout v. Lewis*, 147 Kan. 592, 77 P.2d 973 (1938), a worker was employed by a farmer to remodel his house. The worker was injured during the course of the remodeling. The court noted that an employer may have more than one trade or business. 147 Kan. at 595. The court held that claimant's construction work was a substantial and habitual devotion of time and labor and, even though incident to farm work, was covered by the Workers' Compensation Act. 147 Kan. at 596.

In *Setter v. Wilson*, 140 Kan. 447, 37 P.2d 50 (1934), the court examined the general nature of the employer's business and not the specific work being performed at the time of the injury to exclude a claimant from coverage under the Workers' Compensation Act.

At first blush, it is difficult to reconcile these cases. There is little discussion of the court's rationale. The only logical rationale is that the court interpreted the Act to require the claimant to prove both that the employer was not primarily engaged in an agricultural pursuit and that at the time of the accident the claimant was not engaged in what would be considered agricultural employment.

Kansas' first Workers' Compensation Act was called "An Act to provide compensation for workmen injured in certain hazardous industries." L. 1911, ch. 218. This Act did not specifically exempt agricultural pursuits. However, the next session of the legislature did address the issue of agricultural pursuits.

The 1913 amendment to the Act read:

"This act shall apply only to employment in the course of the employer's trade or

business on, in or about . . . . [Listing of specific trades and businesses] . . . and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain; each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workman engaged therein are inherent, necessary, or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen. . . . Agricultural pursuits and employments incident thereto are hereby declared to be non-hazardous and exempt from the provision of this act." L. 1913, ch. 216.

This section of the Act was amended a number of times over the years, but for purposes of this case, the controlling language remained substantially the same as when it was last amended in 1959.

"44-505. **Application of act.** This act shall apply only to employment in the course of the employer's trade or business in the following *hazardous employments*: Railway, motor transportation line, factory, mine or quarry, electric, building or engineering work, laundry, natural-gas plant, county and municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, each of which employments is hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workmen engaged therein is inherent, necessary, or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen.

. . . .

"*Agricultural pursuits and employments incident thereto are hereby declared to be non-hazardous and exempt from the provisions of this act.*" K.S.A. 44-505 (Weeks). (Emphasis added.)

K.S.A. 44-505 (Weeks) expressly stated that the Act was to apply only to employment in the hazardous trades or businesses designated in the statute. See *Greenwood v. Blackjack Cattle Co.,* 204 Kan, 625, 627, 464 P.2d 281 (1970); *Campos v. Garden City Co.,* 166 Kan. 352, 201 P.2d 1017 (1949).

The Supreme Court discussed the purpose of the Act in *McRoberts v. Zinc Co.,* 93 Kan. 364, 144 Pac. 247 (1914).

"In the enactment of the compensation law the legislature recognized that the common-law remedies for injuries sustained in certain hazardous industries were inadequate, unscientific and unjust, and therefore a substitute was provided by which a more equitable adjustment of such loss could be made under a system which was intended largely to eliminate controversies and litigation and place the burden of accidental injuries incident to such employments upon the industries themselves, or rather upon the consumers of the products of such industries." 93 Kan. at 366.

The 1913 amendment to the Act made it clear that agricultural pursuits were not considered to be hazardous. The question arises as to why the legislature used the phrase "agricultural pursuits and employments incident thereto." A "pursuit" is engaging in a profession, business, trade or occupation, see Black's Law Dictionary 1401 (4th ed. rev. 1968); therefore, it is clear that the legislature intended to exclude from coverage those whose occupation was in agriculture. When the legislature used the language "and employments incident thereto," it meant employments that are normally considered to be part of agriculture. The language shows the legislative intent to exclude from covered employment that portion of the employment which is agriculture related. The cases are all consistent with this rationale. This rationale also explains the dual employment cases. See *Thorp v. Victory Cab Co.*, 172 Kan. 384, 240 P.2d 128 (1952), *Campos v. Garden City Co.*, 166 Kan. 352, *Shrout v. Lewis*, 147 Kan. 592, and *Peters v. Cavanah*, 132 Kan. 244.

In 1974, the legislature amended 44-505 as follows:

"[T]he workmen's compensation act shall apply to all employments wherein employers employ employees within this state except that such act shall not apply to: (1) Agricultural pursuits and employments incident thereto . . . ." L. 1974, ch. 204, § 8.

This section of the act also provides for an exemption for those employers who have a payroll of less than $10,000 in the preceding year.

This was a major philosophical change. The language of the 1974 amendment shows the legislature intended that all employments be covered by the Act unless they were specifically exempt. See Moore, *Workmen's Compensation—An Introduction to Changes in the Kansas Statute*, 24 Kan. L. Rev. 603 (1976). The 1974 amendment limits the coverage of the exemption. It clearly shows that the exemption applies only to those who are engaged in the pursuit of agriculture. Additionally, the language indicates that within the pursuit of agriculture it is only those employments that are incident to agriculture which are exempt. Because of this change in philosophy, we find that the cases decided prior to the 1974 amendment are no longer controlling when there is a need to address the question of what is an agricultural pursuit and an employment incident thereto.

We hold that, when a respondent raises the agricultural pursuit

defense, the court must follow a two-step analysis. The first step is to determine whether the employer was engaged in an agricultural pursuit. If the answer to this question is no, then the court may find that there is coverage. If the answer is yes, then the court proceeds to the second step, which is to determine if the injury occurred while the employee was engaged in an employment incident to the agricultural pursuit. If the answer to that question is yes, then the employee is not covered by the Act. If the answer to that question is no, then there is coverage.

In *Whitham v. Parris*, 11 Kan. App. 2d 303, we set out three factors for determining whether a specific pursuit or business is an agricultural pursuit within the meaning of K.S.A. 44-505(a): "(1) the general nature of the employer's business; (2) the traditional meaning of agriculture as the term is commonly understood; and (3) each business will be judged on its own unique characteristics." 11 Kan. App. 2d 303, Syl. ¶ 3 (citing *Tuma v. Kosterman*, 106 Idaho 728, 730, 682 P.2d 1275 [1984]). In *Whitham*, the claimant was injured when a veterinarian took a blood sample from a horse he was holding. His employer raised horses for show purposes and raised other livestock for consumption. We held that the general nature of the business was not related to an agricultural pursuit and was thus covered by the Workers' Compensation Act. 11 Kan. App. 2d at 306-07.

When we apply the *Whitham* test to the facts of this case, we find Frost is covered by the Act. The trial court found that Builders was primarily engaged in construction work, and that Frost was primarily employed as a foreman on a construction crew. Therefore, Frost's injury was incident to construction employment and not to an agricultural pursuit and, thus, was covered by the Act.

Builders and the Fund contend that because Builders did not profit from the farm operation and because Strickland reimbursed the company for Frost's wages, Frost was not really employed by Builders at the time of his accident. The undisputed facts are that Frost was paid by company check and he was sent to the farm by his supervisor at Builders. Although it is not controlling, Frost considered the farm work part of his construction job. There is substantial evidence supporting a conclusion that he was employed by the construction company at the time he was injured on the farm.

Because the Workers' Compensation Act is to be liberally construed and because there is substantial evidence supporting a finding that Builders was not engaged in an agricultural pursuit, we hold that the trial court did not err in its award. It does not make any difference that the work being performed by Frost at the time of the injury would be considered to be agricultural employment.

The final issue on appeal is whether the trial court erred when it found the Fund liable for two-thirds of Frost's compensation and Builders liable for one-third. The Fund contends that no substantial evidence supports this allocation.

" 'The term "substantial evidence" when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved.' " *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

Testimony was taken from three doctors who had examined Frost. Dr. Roger Ihrig testified that Frost's history of back problems was consistent with his injury on the farm. He testified that Frost's herniated disc may have been the result of a preexisting injury.

Dr. Gregg Snyder diagnosed Frost as suffering from a 15% permanent partial impairment. He made no assumptions about the relationship between the prior injury and Frost's current condition but said that the two injuries were theoretically related.

Dr. Reiff Brown, an orthopedic surgeon, examined Frost's records from 1977 and testified that Frost would not suffer his current problems without some previous herniation. He testified that two-thirds of Frost's current disability was the result of his preexisting condition.

The uncontroverted expert testimony supported the trial court's allocation of compensation. The trial court did not err when it found the Fund to be two-thirds liable for Frost's compensation.

Affirmed.