No. 36,535

THE STATE OF KANSAS, *Plaintiff,* v. T. J. HANNIGAN (Defendant), *Appellant,* and THE CITY OF NEWTON (Intervenor), *Appellee.*

(170 P. 2d 138)

Opinion filed June 8, 1946.

*John P. Flinn,* of Newton, argued the cause, and *Ezra Branine, Alden E. Branine* and *Fred Ice,* all of Newton, were on the briefs for the appellant.

*J. Sidney Nye,* of Newton, argued the cause for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action was instituted by the state in the district court of Harvey county to have (1) an automobile declared a common nuisance under the provisions of G. S. 1935, 21-2162, by reason of the alleged fact one T. J. Hannigan had used it for the illegal transportation of intoxicating liquors; (2) the automobile forfeited and sold pursuant to the provisions of G. S. 1935, 21-2165; and (3) to have the proceeds from the sale disposed of as provided by law.

The automobile was seized pursuant to a state warrant. At the time of seizure by the sheriff it was in the possession of the city of Newton. That city intervened in the state's action and sought to have possession of the automobile restored to it on the theory it was the owner thereof. The intervening petition, in substance, alleged:

Pursuant to statutory authority the city enacted ordinances for the following purposes: Declaring an automobile used for illegal transportation of intoxicating liquors from one place to another within the city to be a common nuisance; providing for the filing of a complaint or information in the city police court charging the automobile with being a common nuisance; providing for a warrant to be issued out of the police court for its seizure; providing for its forfeiture, sale and the distribution of the balance of the proceeds of the sale remaining after the payment of designated claims; and specifying such balance should be paid to the treasury of the city of Newton and credited to its general fund.

The intervening petition further alleged:

The automobile while so used as a common nuisance was the property of Theodore J. Hannigan or Enloa E. Reed, or both of them; the automobile previously was seized pursuant to a complaint and warrant issued out of the city police court; that court declared it to be a common nuisance, forfeited it and ordered its sale; the automobile was sold after due notice given by the police court pursuant to ordinance; the city purchased the automobile at the public sale for $1,600, it being the highest bidder therefor.

To the petition were attached copies of the city ordinances prescribing the procedure above outlined. Without setting forth the various ordinances it is sufficient for present purposes to say the procedure provided thereby conformed in substance to that prescribed in the statutes authorizing the forfeiture and sale of automobiles used in the illegal transportation of intoxicating liquors. (G. S. 1935, 21-2162 to 21-2167, incl.) The ordinances were, however, so framed as to provide for such an action in the city's police court rather than in state courts.

In an answer filed by the state to the intervening petition of the city, the state, in substance, alleged:

It admitted the city had enacted the ordinances and had undertaken to confiscate the automobile substantially as alleged in its intervening petition; the ordinances and attempted procedure pursuant thereto were void; it admitted the city of Newton was a city of the second class and that such cities had such power to enact ordinances pertaining to intoxicating liquors as are conferred by G. S. 1935, 21-2154, but that no power was conferred upon cities to enact ordinances pertaining to the confiscation of automobiles as a common nuisance.

In the answer of the defendant T. J. Hannigan to the city's intervening petition it was, in substance, alleged:

He admitted the city seized and attempted to sell the automobile pursuant to the ordinances and procedure set forth in its intervening petition; he admitted the city by G. S. 1935, 21-2138, was granted power to enact ordinances prohibiting the illegal sale of intoxicating liquors within its corporate limits but alleged the city was granted no power or authority by that or any other statute to enact ordinances permitting it to seize, forfeit and sell an automobile on the ground it was used for the illegal transportation of liquors; the ordinance of the city and its attempted exercise of power thereunder are void; the city did not pay $1,600, or any portion thereof, for the automobile; the bid of the city was also in violation of the cash basis and budget law.

After the issues were thus joined plaintiff, the state, filed a motion requesting the following findings of law:

"First. That a Police Court of a second class city has no civil jurisdiction.

"Second. That a second class city has no power to enforce ordinances pertaining to civil matters.

"Third. That a city of the second class lacks the power to enact and enforce ordinances relating to confiscation of automobiles declared to be nui-

sances by reason of transporting intoxicating liquor from place to place in said city, or within the state of Kansas."

That motion was overruled. The district court did, however, render judgment in favor of the city and against the state and the defendant upon the pleadings of the respective parties. The court concluded (1) the city ordinances were valid; (2) the city's seizure, forfeiture and sale of defendant's automobile were valid acts; (3) the city was the owner of the automobile; and that (4) the sheriff of Harvey county should deliver the automobile to the city.

Only defendant Hannigan has appealed. The principal question presented by the pleadings is whether power and authority have been conferred upon cities to enact ordinances (1) declaring an automobile to be a common nuisance when used for the illegal transportation of intoxicating liquors; (2) granting jurisdiction to a police court over an action against the automobile as such, the *res*, as distinct from criminal action against the operator of an automobile for illegal transportation of intoxicating liquors; and (3) to declare a forfeiture of the *res* and to sell it and distribute the balance of the proceeds from such sale to the general fund of the city.

The parties direct our attention to most of the pertinent statutes. G. S. 1935, 14-401, provides:

"The governing body of each city governed by this act shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, alter, modify or repeal any and all ordinances not repugnant to the constitution and laws of this state, and such as it shall deem expedient for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect."

G. S. 1935, 14-428, reads:

"The council may procure, purchase or condemn, and hold for the city, for the purposes hereinafter mentioned, within or without the city limits, within twenty miles therefrom, all necessary lands for hospital purposes and waterworks, and erect, establish and regulate hospitals, workhouses and poorhouses, and provide for the government and support of the same, and make regulations to secure the general health of the city, *and to prevent and remove nuisances*, and to provide the city and its inhabitants with water: *Provided,* The condemnation of such property outside of the city limits shall be regulated in all respects as provided by law: *And provided further,* That the police jurisdiction of the city shall extend over such lands and property to the same extent as over public cemeteries." (Emphasis supplied.)

G. S. 1935, 14-439, provides:

"For any purpose or purposes mentioned in the preceding sections, the council shall have power to enact and make all necessary ordinances, rules and regulations, and they shall also have power to enact and make all such ordinances, bylaws, rules and regulations not inconsistent with the laws of the state as may be expedient for maintaining the peace, good government, and welfare of the city and its trade and commerce; *and all ordinances may be enforced by prescribing and inflicting upon inhabitants or other persons violating the same, such fine not exceeding one hundred dollars or such imprisonment not exceeding three months, or both such fine and imprisonment,* as may be just for any one *offense,* recoverable with costs of suit, together with judgment of imprisonment until the fine and costs be paid or satisfied; and any person committed for the nonpayment of fine and costs, or either, while in custody, may be compelled to work on the streets, alleys, avenues, areas and public grounds of the city under the direction of the street commissioner or other proper officer, and at such rate per day as the council may by ordinance prescribe, until such fine and costs are satisfied." (Emphasis supplied.)

G. S. 1935, 21-2138, is as follows:

"Cities of the first, second and third classes may provide by ordinance for the prohibition of the sale of intoxicating liquors contrary to law *and the suppression of common nuisances as hereinbefore defined,* and for the search *of premises where such common nuisances are maintained,* and the seizure and destruction of all intoxicating liquors, bottles, glasses, kegs, pumps, bars and other property used in maintaining the same. *Such ordinances may be enforced by imposing as a penalty for the violation of the same* a fine of not less than one hundred dollars nor more than five hundred dollars, and imprisonment for not less than thirty days nor more than six months for each offense, and payment of the costs, and shall provide for commitment until fine and costs are paid. In prosecutions for violations of such ordinances, it shall not be necessary to describe in the complaint the kind of liquor sold or used, or the place where sold or kept, except where the charge is for maintaining a common nuisance; nor shall it be necessary to state the name of the person to whom sold, or to prove in the first instance that the party charged did not have a permit to sell intoxicating liquors." (Emphasis supplied.)

G. S. 1935, 21-2154, provides:

"That all cities of this state may enact and enforce ordinances relating to *possession, receipt, transportation and delivery of intoxicating liquors, and prohibiting all acts made unlawful by the laws of the state and provide punishment for each violation of such ordinances* by fines of not less than one hundred dollars nor more than five hundred dollars and by imprisonment for not less than thirty days nor more than six months and payment of costs and providing for commitment until such fines and costs are paid. In prosecutions for violations of such ordinances it shall not be necessary to describe in the complaint the kind of liquor or the place where kept or the name of the person to whom delivered." (Emphasis supplied.)

Analysis of the early statutes conferring certain powers on cities (G. S. 1935, 14-401; 14-428; 14-439), heretofore quoted, clearly discloses no power was specifically conferred upon municipalities to forfeit and sell an automobile as a common nuisance. Later the legislature did, however, undertake to confer express power on cities to enact ordinances relative to the enforcement of liquor laws and to provide specific punishment for the violation thereof. (G. S. 1935, 21-2138 [1901] and G. S. 1935, 21-2154 [1917].) It will be observed neither of the last-mentioned statutes, heretofore quoted, expressly confers power to enact ordinances pertaining to the forfeiture and sale of automobiles as a common nuisance. In fact, G. S. 1935, 21-2138, confers only power on municipalities to prohibit "the *sale* of intoxicating liquors contrary to law *and the suppression of common nuisances as hereinbefore defined."* (Our emphasis.) Automobiles used in the illegal transportation of intoxicating liquors were not "hereinbefore defined." That statute specifically refers to "premises" and "the place" where liquors were sold or kept as a common nuisance. The "premises" or "the place" were defined in previous statutes. (G. S. 1935, 21-2130 to 21-2137, incl., as amended.) Furthermore, the penalty provided for violation of the ordinance was not the forfeiture and sale of instrumentalities employed, but the destruction thereof and the imposition of a fine and sentence as punishment on the violator of the ordinance for the offense or crime committed. The penalty provision of G. S. 1935, 21-2154, for acts therein described likewise is the imposition of a fine and imprisonment *on the offender for the offense committed.* In other words, each of the last two mentioned statutes which deal specifically with the violation of liquor laws, first, confer power on cities to prohibit the act or acts which the ordinance makes an offense and, second, grant power to cities to impose a stated penalty of fine and imprisonment for the commission of the offense.

From what has been said it is clear the legislature did not expressly confer power upon municipalities to enact ordinances pursuant to which they could forfeit and sell automobiles used in the transportation of intoxicating liquors. Nor do we think it reasonably can be said the legislature intended such power was necessarily or fairly implied by the power it expressly granted. That subject will receive further attention presently. Of course, under the statutes referred to cities have power to enact ordinances enabling them to conduct criminal prosecutions in the police courts against persons

committing not only the offenses of illegal possession and sale but also the offense of illegal transportation of intoxicating liquors and to impose punishment therefor. Moreover, the penalty to be provided by the authorized ordinances coincides with that prescribed by state law for each of such offenses. Cities, therefore, are not left without a remedy to prosecute any individual for the offense of illegally transporting intoxicating liquors.

Municipal corporations are creations of law and can exercise only powers conferred by law and take none by implication. The only powers municipalities ever acquire in addition to those expressly granted are powers necessary to make effective the power expressly conferred. (*City of Leavenworth v. Norton, et al.*, 1 Kan. 432; *State, ex rel., v. Gas Co.*, 88 Kan. 165, 127 Pac. 639; *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 274 Pac. 258; *Brown v. Arkansas City*, 135 Kan. 453, 455, 11 P. 2d 607; *State, ex rel., v. Sedgwick County Comm'rs*, 150 Kan. 143, 91 P. 2d 2; *Russell State Bank v. Steinle*, 159 Kan. 293, 153 P. 2d 906.) Reasonable doubt relative to power conferred upon municipalities must be resolved against them. (*Brown v. Arkansas City*, supra, p. 455.)

In 1919 the legislature provided an additional method of dealing with the liquor traffic. In addition to the law which previously made it a crime to transport intoxicating liquors, G. S. 1935, 21-2102, and in addition to existing laws defining a common nuisance, the legislature declared a vehicle to be a common nuisance when used for the transportation of intoxicating liquors and provided a definite procedure for abating that particular nuisance. (Laws 1919, ch. 217; G. S. 1935, 21-2162 to 21-2167, incl.) By express provision it was declared that act was supplemental to and did not affect any existing statutes relating to the seizure and destruction of intoxicating liquors and other property as set out in G. S. 1935, 21-2130 and 21-2135 and that it was not to be construed as repealing any existing statutes in reference to intoxicating liquors. (G. S. 1935, 21-2167.)

It has been held the prohibitory liquor law is to be considered and construed as an entirety, and the provisions as to the abatement of common nuisances are ordinarily to be interpreted as if all had been enacted at the same time. (*State v. Storm*, 74 Kan. 859, 86 Pac. 145; *Norton v. Saline County Comm'rs*, 118 Kan. 659, 236 Pac. 819, and cases therein cited.)

In order to determine what power was conferred upon cities and city police courts with respect to the abatement of a common nuisance when it consists of an automobile used in the transportation

of intoxicating liquor we shall therefore construe the 1919 act as though it had been enacted at the same time the other common-nuisance liquor statutes were enacted. When doing so can we reasonably say power was impliedly conferred upon cities to forfeit and sell automobiles as a common nuisance by the powers expressly granted in previous nuisance statutes? We do not think so.

The 1919 act provides a separate, complete and supplemental procedure for the particular purpose intended. The procedure provided embraces the filing of a complaint or information; the seizure of the automobile; notice of hearing to the defendant or defendants in such an action and to all persons claiming any interest in such automobile; the filing of an answer or answers to the complaint made against such automobile; a hearing to determine the charges and all claims or liens asserted against the automobile; the rendition of judgment protecting valid interests and liens; the sale of the automobile; distribution of the proceeds of sale; and appeals from the judgment rendered.

Did the legislature intend to confer power on cities to institute such an action for the abatement of that particular common nuisance and was it intended police courts should have jurisdiction thereof? The proceeding for the forfeiture and sale of the automobile as a common nuisance under the 1919 act is one thing; the prosecution of the driver of the automobile used in the transportation of the liquor is another thing. The latter is a criminal action. The former is a proceeding in rem. It is a procedure against the vehicle and constitutes a civil action. (*State v. Lee,* 113 Kan. 462, 215 Pac. 299; *State v. Robinson,* 118 Kan. 775, 778, 236 Pac. 647; *State v. Powell,* 120 Kan. 731, 732, 244 Pac. 1053; *State v. Bennell,* 137 Kan. 183, 19 P. 2d 443.)

Ordinarily police courts do not have jurisdiction over civil matters. The only source of their power is such as the legislature may provide. (Const., art. 3, § 1; *Brown v. Arkansas City,* 135 Kan. 453, 455, 11 P. 2d 607.) The pertinent portion of G. S. 1935, 14-801, reads:

"The police judge shall be a conservator of the peace, and shall have exclusive jurisdiction to hear and determine all *offenses* against the ordinances of the city. . . ." (Emphasis supplied.)

The legislature has defined the word "offense." G. S. 1935, 21-128, reads:

"The terms 'crime,' 'offense,' and 'criminal offense,' when used in this or

any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine, or both, may by law be inflicted."

We need not, however, now determine whether police courts have power to abate other common nuisances under other statutory provisions. It appears the power to abate the particular common nuisance here involved was not intended to be conferred upon cities. While the abatement provisions of the 1919 act do not specify the court in which the abatement action may be instituted it is quite clear the legislature intended the proceedings should be instituted and prosecuted by the state rather than by cities. The act expressly imposes upon county attorneys, and not upon city attorneys, the responsibility and duty to adduce the evidence in support of the allegations charging the automobile with being a common nuisance. G. S. 1935, 21-2164, in part provides:

". . . and whether any answer shall be filed or not, it shall be the duty *of the county attorney* to appear and adduce evidence in support of such allegation." (Emphasis supplied.)

Furthermore, the appeal statute likewise recognizes only the state as a proper party plaintiff in such an abatement action. G. S. 1935, 21-2166, reads:

"*Either the state* or any defendant or other person claiming the property seized, or an interest therein, may appeal from the judgment of the court in any such proceedings against the property seized in the manner provided for taking appeals in criminal cases. Any claimant of such property who appeals, in order to stay proceedings, must enter into an undertaking with two or more sureties *to the state of Kansas, to be approved by the trial court or the clerk thereof,* in the sum of not less than one hundred dollars ($100) nor less than double the amount of the value of said property as fixed by the court and the costs adjudged against said property, conditioned that he will prosecute his appeal without unnecessary delay, and if judgment be entered against him on appeal he will satisfy the judgment and costs, and no bond shall be required for an appeal *by the state,* and such appeal shall stay the execution of the judgment." (Emphasis supplied.)

Analysis of the 1919 act compels the conclusion the legislature intended the state, and not cities, should abate the particular nuisance therein described.

Decisions of this court cited in the able brief of counsel for the city have all received careful consideration. Many of them involve offenses against ordinances which are made punishable by fine or imprisonment, or both. Police courts, of course, have jurisdiction of actions involving such offenses. Great emphasis is placed by

the city upon the decision in *Kansas City v. Jordan*, 99 Kan. 814, 163 Pac. 188, decided prior to the 1919 automobile nuisance act. That decision and probably a few others would be highly persuasive were it not for the legislative intent indicated in the 1919 act with respect to the abatement of the particular common nuisances therein defined. Counsel for the city also forcefully argues police power to abate all nuisances is a necessary incident of municipal power. While considerable has been written upon that subject by able text writers, and others, we think it is clear such broad incidental power, assuming it exists, may not be exercised by municipalities in contravention of expressed legislative intent.

There is another reason which requires us to hold the ordinance invalid. Even under the general grant of powers to cities of the second class ordinances enacted by such cities cannot be repugnant to the laws of the state. (G. S. 1935, 14-401.) The instant ordinance made provision for distribution of the balance remaining after complying with the provisions pertaining to costs of the action and liens on the automobile as follows:

"The balance remaining shall be paid into the treasury of the City of Newton to the credit of the general fund."

The legislature in its wisdom saw fit to make a contrary disposition of such funds. It declared:

"The balance remaining shall be paid into the treasury of the county for the support of the common schools." (G. S. 1935, 21-2165.)

Manifestly, a city cannot by ordinance nullify the legislative mandate by diverting such funds to a wholly different purpose.

It is true the defendant Hannigan did not appeal from the judgment of the police court. The judgment being void by reason of that court's lack of jurisdiction over the subject matter it could not bind the defendant. It is elementary that a void judgment is a nullity and may be challenged at any time. The defendant, therefore, had the right to contest the action of the city in the district court wherein it asserted ownership of the automobile based upon the void judgment.

Counsel for the city argues the defendant Hannigan has no right to be heard for the reason his answer contains no allegation he is the owner of the automobile. Technically construed defendant's answer may be subject to that criticism. The point, however, does not appear to have been presented to the trial court nor does it appear the order for judgment on the pleadings was based thereon.

502

The trial court passed upon questions of law under the statutes and ordinances apparently assuming Hannigan owned or had an interest in the automobile. The city pleaded the automobile when seized by it was the property of the defendant Hannigan or Enloa E. Reed, or both of them. Ownership of the automobile by Hannigan is asserted in his brief. Under the circumstances and especially by reason of the fact that an important question of public interest is involved, upon which the trial court passed, we are not inclined to dispose of the appeal on a technicality. (*Johnson v. Russell,* 161 Kan. 203, 166 P. 2d 568.)

The judgment of the district court declaring the city to be the owner of the automobile and directing the sheriff to deliver it to the city must be reversed and set aside. It is so ordered.