No. 38,560

THE CITY OF HUTCHINSON, KANSAS, *Appellee*, v. J. W. HARRISON, *Appellant*.

(244 P. 2d 222)

Opinion filed May 10, 1952.

*Max Regier*, of Newton, argued the cause and was on the briefs for the appellant.

*Fred C. Littooy*, city attorney, of Hutchinson, argued the cause, and *Bill R. Cole*, assistant city attorney, of Hutchinson, was with him on the briefs for the appellee.

*Donald Hickman*, city attorney, Arkansas City, *R. C. Woodward* city attorney, El Dorado, *James Putnam*, city attorney, Emporia, *F. W. Bayless*, city attorney, Fort Scott, *Roy V. Nelson*, city attorney, Hiawatha, *John O'Brien*,

city attorney, Independence, *C. W. Brenneisen, Jr.*, city attorney, Kansas City, *Charles Stough,* city attorney, Lawrence, *Hal E. Harlan,* city attorney, Manhattan, *Robert E. Ferguson,* city attorney, Marysville, *W. W. Kennedy,* city attorney, Pittsburg, *Lloyd Hall,* city attorney, Topeka, *W. M. Ferguson,* city attorney, Wellington, and *Fred Aley,* city attorney, Wichita, as *amici curiae.*

The opinion of the court was delivered by

PARKER, J.: J. W. Harrison was prosecuted and convicted in the police court of Hutchinson, Kan., for unlawful parking in violation of the parking meter ordinance of that city and appealed to the district court of Reno county where he was again found guilty of the offense charged and sentenced to pay a fine of $1 and costs for violating such ordinance. This appeal followed.

In view of the issues raised on appeal what took place in the court below prior to the rendition of its judgment is of little consequence. It suffices to say that with the ordinance on which the prosecution is based, the testimony of certain witnesses respecting the method and manner of operation and receipts derived from the parking meters installed under the provisions of such ordinance, and two stipulations respecting facts deemed pertinent by the parties, before it, the trial court overruled a motion to quash the complaint and by virtue of its judgment necessarily upheld the validity of the ordinance.

One of the stipulations of fact completely covers the factual situation existing prior to the date of the commencement of the prosecution and for that reason will be quoted. It reads:

"It is stipulated and agreed by and between the City of Hutchinson, Kansas, and J. W. Harrison that, as set forth in the Complaint on file herein, the defendant, J. W. Harrison, did on the 12th day of December, 1950, between the hours of eight o'clock A. M. and six o'clock P. M., said date being neither a Sunday nor a legal holiday, at and within the said City of Hutchinson, County of Reno, State of Kansas, then and there being at and within said city and county and state, did then and there unlawfully, wrongfully, wilfully and intentionally cause, allow, permit or suffer a motor vehicle, registered in the name of the defendant, J. W. Harrison, to-wit: a 1950 Chrysler automobile, Kansas License number for 1950, 6-14742, owned by said defendant, to be and remain parked in a parking space adjacent to a parking meter number 13 on a street of said city, to-wit: Main Street, a street under the control of said city, in violation of the Parking Meter Ordinance of said city, to-wit: Chapter 15, Sections 107 and 108 of the ordinances of the city of Hutchinson, Kansas, and did then and there fail and refuse to deposit a United States coin of one or five cent denomination and did then and there refuse to set or place said parking meter in operation by manual means, and that at the time of so plac-

ing said automobile and allowing it to remain as aforesaid, said parking meter No. 13 did indicate that said automobile was unlawfully parked therein in violation of the aforesaid ordinance."

So far as its form is concerned the ordinance in controversy, which became effective December 5, 1947, is similar to that adopted by countless municipalities throughout the nation. For our purposes, without extended reference thereto, it can be said:

That its title reads:

"An ordinance relating to traffic and regulating the use of public streets and highways of the City of Hutchinson, Kansas; prescribing regulations relative to the parking upon such streets; providing for purchases leasing, acquiring, installation, operation, maintenance, supervision and regulation and control of the use of parking meters and providing for the payment therefor; defining and providing for the establishment of parking meter zones upon the public streets and for an enforcement thereof and providing penalties for the violation of the terms hereof."

That section 6 reads:

"The City Manager shall have marking painted or placed upon the curb and/or upon the street adjacent to each parking meter for the purpose of designating the parking space for which said meter is to be used and each vehicle parking adjacent or next to any parking meter shall park within the lines or markings so established. It shall be unlawful and a violation of this ordinance to park any vehicle across any such lines or markings or to park said vehicle in such position that the same shall not be entirely within the area so designated by such lines or markings."

That sections 7 and 8, designated in the heretofore quoted stipulation as sections 107 and 108 of the ordinance of the City of Hutchinson, read:

"When any vehicle shall be parked in any space adjacent to which a parking meter is located in accordance with the provisions of this ordinance, the operator of said vehicle shall, upon entering the said parking space, immediately deposit or cause to be deposited a one or five cent coin of the United States, in such parking meter and by manual means set and place said meter in operation and failure to deposit such coin and manually set and place the meter in operation shall constitute a breach of this ordinance and shall subject such person to the penalty prescribed hereinafter.

"Parking meters shall be operated only by United States coins in denominations of one cent and five cents in any number and in any combination; a one cent coin granting the privilege of parking for twelve minutes and a five cent coin granting the privilege of parking for sixty minutes. Provided, however, that no parking privileges shall be granted to extend beyond the time limits specified on the face of said parking meters regardless of the number of coins deposited."

That section 12, the penalty provision thereof, provides:

"Any person who shall violate any of the provisions of this ordinance, and any person who aids, or assists therein, shall, upon conviction thereof by the Police Court be subject to a fine of an amount not exceeding $50.00 for each offense or violation to be imprisoned for a term not exceeding 15 days, in the City Jail, or in any place provided by the municipality for the detention of prisoners or both."

And that section 13, describing the purposes for which the parking meter fee is levied, specifies:

"The fee required to be deposited in said meters is hereby levied as a police regulation and inspection fee to cover the cost of providing space, parking meters and installation and maintenance thereof; the cost of regulation and inspection, operation, control and use of parking meters, spaces and zones created herein; for the regulation and control of traffic moving in and out of, and parking in said parking spaces, and zones herein created and for the cost of any traffic regulation expenses."

It should also be noted that some five months prior to the date of the commencement of the instant prosecution section 13 of the ordinance above quoted had been amended and as then in force and effect read:

"The coins required to be deposited in parking meters as provided herein are hereby assessed as fees for the following uses and purposes: (a) To provide for the proper regulation and control of traffic upon the public streets; (b) To acquire and maintain off-street parking locations and facilities in the City of Hutchinson as authorized by State statute; (c) To cover the cost of supervising and regulating the parking of motor vehicles in the parking meter zones created hereby; (d) To cover the cost of purchasing, leasing, acquiring, installing, operating, maintaining, supervising and regulating the parking meters described herein. A parking meter fund is hereby established and said fees when collected by the City of Hutchinson, as provided herein, shall be deposited with the general funds of the City of Hutchinson but shall be credited by appropriate accounting procedure to said parking meter fund. Monies so credited to said parking meter fund may be disbursed and used for any one or all of the uses and purposes above specified."

Appellant seeks reversal of the judgment convicting him of a violation of the ordinance and imposing a sentence against him in conformity with its terms under specifications of error charging that the district court erred (a) in overruling his motion to quash the complaint and (b) in holding the ordinance in question constitutional and valid.

The gist of all contentions advanced by appellant in support of his specifications of error is that the ordinance violates article 11,

section 1 of our state constitution, providing that the legislature shall provide for a uniform and equal rate of assessment and taxation, because it is designed to raise revenue and such traffic regulations as are included therein are incidental to the fund raising provisions thereof. In fact in his brief and on oral argument he concedes (*a*) it has long since been definitely settled that when police powers are conferred upon it by statute a municipality, in exercising such powers, may constitutionally enact a parking meter ordinance, for regulatory purposes; (*b*) that before the instant ordinance can be held unconstitutional it is his obligation to establish that it is a revenue raising measure; (*c*) that profit alone does not make a regulatory ordinance invalid; and (*d*) that his right to a reversal of the judgment hinges on whether such enactment is a regulatory or a revenue raising ordinance. Thus it appears, that so far as the present case is concerned, we might well turn to the question last mentioned without specifically passing upon whether, under the constitution and statutes of this state, a municipality may lawfully enact a parking meter ordinance of the character here involved. However, since the question whether municipalities have legal authority, under and by virtue of such ordinances, to install and use mechanical parking meters for the purpose of enforcing parking regulations pertaining to their streets has never been squarely passed upon by this court we are not disposed to do so.

Turning to such question we observe, although there are a few decisions to the contrary, that the great weight of authority in this country sustains the validity of parking meter ordinances when such ordinances are enacted in the exercise of police powers conferred by statute if they are neither palpable nor on their face revenue measures or arbitrary, oppressive, unreasonable, and discriminatory.

For decisions sustaining this view, so numerous that we are not disposed to cite them in this opinion, see I Blashfield (Perm. Ed.) Cyclopedia of Automobile Law and Practice, 138 to 160 Incl. § 78.10; 2 Berry (7th Ed.), Automobiles, 132 § 2.127, particularly the 1947 Cumulative Supp. to such edition; 108 A. L. R. Anno. 1152; 130 A. L. R. Anno. 316; West's American Digest System, Automobiles, § 7(b); Report No. 119 for 1947 of National Institute of Municipal Law Officers, page 8; 60 C. J. S., Motor Vehicles, 140 § 28(e).

Our review of the statute reveals that in addition to their general powers (G. S. 1949, 13-401) cities of the first class, such as Hutchin-

son, are specifically vested (G. S. 1949, 13-423) with what is commonly known as general police powers. It further discloses a definite understanding on the part of our legislature that under the police powers conferred upon it by legislative fiat such a city has authority to regulate the standing or parking of vehicles by means of mechanical parking devices. See G. S. 1949, 8-508 providing that the provisions of our uniform act regulating traffic on the highways shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from regulating the standing or parking of vehicles; G. S. 1949, 12-2202, authorizing any city of the first or second class to acquire off-street parking stations to relieve parking congestion on its streets and pay therefor with money derived from *the parking meter fund,* also *that revenue from parking meters,* either from off-street parking *or upon the streets, not needed for the purchase and maintenance of parking meters,* regulation of parking, and the operating of off-street parking facilities may be used to pay off bonds issued for the purpose of obtaining funds to finance such facilities; G. S. 1951 Supp. 13-1379, authorizing cities of the first class to issue revenue bonds for the purpose of obtaining money with which to acquire public parking stations and retire such bonds *from the net revenue derived* from the operation of off-street parking stations and *from parking meters in said city.* This statute, it is to be noted, not only provides that all sums necessary for the operation of off-street *and on-street parking meters* and facilities *shall be a first claim on all revenue derived from such parking meters* and facilities but specifies that the net amount derived therefrom, after the deduction of necessary operating expenses, may be pledged for the payment of any revenue bonds issued to pay for the improvement of off-street parking meters and facilities on any improved parking lots within such city; and G. S. 1951 Supp. 13-1391, relating to the establishment and improvement of off-street parking facilities in cities of the first class providing that in the event revenues from off-street parking facilities are insufficient for their operation *then any deficiency shall be paid from the funds derived from on-street parking meters* and that if revenues from off-street parking facilities are insufficient to pay the interest and principal of bonds issued to acquire such facilities, as the same become due, the governing body of the city issuing them *shall make up any such deficiency from revenues derived from on-street parking meters.*

Moreover we are unable to find anything in our constitution prohibiting the enactment of parking meter ordinances under and pursuant to the foregoing statutory authorizations so long as the meter charge imposed under their terms is uniformly applied and has some reasonable relation to the expense of acquiring, maintaining, operating, and supervision of motor vehicle parking facilities in the congested areas of such a city.

From an extended examination and analysis of the decisions, to which we have heretofore referred as representing the great weight of authority, we are convinced, that under statutes such as have been heretofore related, the rule that municipal parking meter ordinances enacted for regulatory purposes are valid is sound in principle and should be followed. This, in our opinion, compels the conclusion appellant's motion to quash the complaint, which we pause to note was drawn in conformity with provisions of the ordinance in question, was properly overruled. In reaching this conclusion we have ignored, not overlooked, the fact that by some sort of an arrangement preceding the trial and before passing on the motion to quash the trial court permitted the parties to adduce evidence respecting the amount of revenue derived from parking meters. As we understand it a motion to quash a complaint, predicated upon the ground the ordinance on which it is based is invalid, is to be determined from the face of the ordinance itself without aliunde evidence. When the ordinance in controversy is tested by this rule we find nothing in its terms to warrant a construction that it was enacted for revenue raising purposes.

Thus we come to the final and what appellant concedes is the decisive issue on appeal. Has it been made to appear from the record that the parking meter ordinance of the city of Hutchinson is unconstitutional because it is one designed to raise revenue and such traffic regulations as may result are incidental to the fund raising provisions thereof? Appellant's position that this question must be answered in the affirmative is based entirely upon the revenue derived from parking meters in the city for the year 1950, from which he deducts expenses directly chargeable to the parking meter facilities alone. By this process he arrives at the conclusion that the net revenue derived from parking meters for the year 1950 was $45,488.75. He contends that in deciding the issue attention should be given only to those costs of operation of the ordinance as are directly chargeable and result directly from the installation and operation of parking meters in the city for the year 1950.

We are unable to agree with either phase of the foregoing contention. As to the first, after an examination of the challenged ordinance, we are in accord with the principle adhered to in *Hickey v. Riley*, 177 Ore. 321, 162 P. 2d 371, and the decisions therein cited. In the opinion of that case, after reviewing a somewhat similar ordinance and in disposing of a like contention, it is said the fact revenue has resulted in the operation of parking meters does not in itself classify an ordinance as a revenue measure and that, where authorized by such an ordinance, the city has the right to apply the revenue not only to the narrow and restricted purposes of the mere installation, operation, and maintenance of the meters but also to the broad purposes of general traffic control. With respect to the second, we believe, that in determining such issue consideration must be given to revenue derived during the entire period of time the ordinance had been in effect, not to a single year. When this is done, giving the city credit for parking meter revenues expended for costs, installation, and operation of the parking meter system and for purposes of general traffic control within the city, the evidence discloses that from 1948 to 1950 meter receipts were a little over $145,000 and expenditures more than $115,000 and that the balance on hand in the city's parking meter fund, which it is to be noted was never turned over to its general revenue fund, amounted to exactly $30,865 for that three-year period of time. Under such conditions and circumstances, without laboring the right of the city to raise funds from on-street parking facilities for the purpose of establishing public parking stations and off-street parking facilities as clearly contemplated by the last two sections of the statute heretofore cited, and by section 13 of the ordinance as amended, we are convinced the ordinance in controversy was enacted primarily for purposes of traffic regulation and was not intended as a revenue measure. Moreover, after a careful review of the entire record, we are unwilling to say the evidence discloses the revenue derived from parking meters installed and in operation under the authority of such ordinance is so clearly in excess of the amounts necessary and properly expendable to carry out the purposes for which it was enacted as to warrant or compel a conclusion it is now being used essentially as a revenue raising measure.

The judgment is affirmed.