No. 39,241

THE STATE OF KANSAS, ex rel., DORAL H. HAWKS, County Attorney of Shawnee County, Kansas, *Plaintiff*, v. THE CITY OF TOPEKA, KANSAS; GEORGE G. SCHNELLBACHER, Mayor; J. GLEN DAVIS, Finance Commissioner; LLOYD B. SMITH, Water Commissioner; C. MADISON WILLIAMS, Street Commissioner; WILLIAM R. YERKES, Park Commissioner, all in their representative capacity, *Defendants.*

(270 P. 2d 270)

Opinion filed May 8, 1954.

*Lester M. Goodell,* of Topeka, argued the cause, and *Doral H. Hawks,* ccunty attorney, of Shawnee county, and *Margaret McGurnaghan,* and *Frederick A. Mann,* both of Topeka, were with him on the briefs for the plaintiff.

*Frederic J. Carman,* city attorney, of Topeka, and *Robert L. Webb,* of Topeka, argued the cause, and *James A. McClure, Ralph W. Oman, Philip E. Buzick, Robert A. McClure,* and *James D. Waugh,* all of Topeka, were with them on the briefs for the defendants.

The opinion of the court was delivered by

WERTZ, J.: This is an original proceeding in the nature of quo warranto brought by the State upon the relation of the county attorney of Shawnee county against the City of Topeka, hereafter referred to as the City, and its officers, to oust the City of Topeka from exercising its right of eminent domain in acquiring off-street parking facilities, alleging the statutes in question to be unconstitutional; that the acquisition and appropriation of the properties in

question were not taken for a public use, and that the contract for a lease entered into between the parties was invalid.

This action arose out of the authority conferred upon cities of the first class as provided by G. S. 1953 Supp., 13-1388 to 13-1391, inclusive, which grants power to all such cities to acquire by eminent domain, real estate for the purpose of off-street parking, and for the improvement of such land by construction of a building thereon so as to provide parking facilities, the financing of such project to be derived from the sale of revenue bonds payable out of the income from the operation of the parking facilities, and in the event of any deficiency, authority is given for payment of bonds out of the net proceeds of revenues derived from the on-street parking meters.

In December, 1950, the city acting under the provisions of the mentioned statutes caused an investigation and survey to be conducted for the purpose of determining the extent of on-street parking, the need of and suitable locations for off-street parking facilities, and the approximate acquisition and improvement costs. The survey was made by the state highway commission which made a report and filed the same with the City in its final form, prior to September 30, 1952. A further survey was made in behalf of the City by Donald A. Seltsam and filed with the City on March 13, 1952.

On September 8, 1952, defendant City entered into a contract to lease certain parking facilities to be later acquired by the City to Park and Shop, Inc., a private corporation, hereafter referred to as Park and Shop, specially organized by a group of individuals, most of whom were merchants operating businesses on Kansas Avenue, for the purpose of entering into a lease contract with the City of Topeka for the operation, management and control of municipally-owned parking lots or stations.

After the contract between Park and Shop and the City had been executed by the parties, the City met November 18, 1952, in regular session and presented for first reading a resolution, the substance of which was that the City deemed it advisable to acquire certain properties for off-street parking (describing them), stating the aggregate cost for acquiring and improving the property to be acquired and other costs incident thereto, and authorizing $2,000,000 of revenue bonds to be issued by the City to pay the aggregate cost, and further providing a date certain for public hearing for any protests to the resolution. On December 16, 1952, the City heard all protestants.

On December 23, 1952, the City adopted an order for condemnation of the properties to be taken, and on December 30, 1952, it adopted Ordinance No. 8364, which declared it necessary to condemn and appropriate for its use for the purpose of establishing off-street parking facilities two separate pieces of property, one to be cleared and paved for surface parking and the other to be cleared and a ramp-style building constructed thereon as quickly as possible, consisting of a basement and three levels to provide parking accommodations for approximately 400 automobiles, and authorized the City to make application to the district court for the appointment of appraisers and to make appraisement of damages occasioned by the acquisition. Other provisions of the ordinance relating to the improvements thereon need not be noted.

On March 28, 1953, the City instituted its proceedings in condemnation of the properties hereinbefore mentioned for the establishment of two municipally-owned parking lots, and petitioned for the appointment of appraisers who later filed their report awarding damages. On April 5, 1953, the City by ordinance authorized the issuance of revenue bonds for the purpose of paying for the acquisition and improvement costs of the two parking sites and for other incidental costs.

We shall discuss the three questions presented here in their order:

1. Does G. S. 1953 Supp., 13-1388 to 13-1391, inclusive, constitute an illegal delegation of legislative power to the city?

2. Does the taking of private property for off-street parking constitute a public use?

3. Is the contract for a lease for the operation, management and control of off-street parking facilities valid?

The State first contends the mentioned statutes violate section 1, article 2, of our state constitution, "the legislative power of this state shall be vested in a house of representatives and senate," in that no adequate standards are prescribed by the statutes, and are therefore an unlawful delegation of legislative power.

It is a well-settled rule that an act duly passed by the legislature is presumed to be constitutional and, before the courts can declare it invalid, it must clearly appear to be unconstitutional. (*State, ex rel., v. Richardson,* 174 Kan. 382, 389, 256 P. 2d 135; *Board of Education of School Dist. No. 1 v. Robb,* 168 Kan. 368, 212 P. 2d 306; *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677; West's Kansas Digest, Constitutional Law, § 48, and 1 Hatcher's Digest [Rev. Ed.], Constitutional Law, § 16.)

Courts do not inquire into the motive or wisdom of legislation. Such considerations are solely the province of the lawmakers. The duty of the court is to make the legislative will effective whenever reasonably possible to do so. (*State, ex rel., v. Russell,* 171 Kan. 709, 237 P. 2d 363; *Campos v. Garden City Co.,* 166 Kan. 352, 355, 201 P. 2d 1017.)

Do the statutes in question set forth sufficient standards so as not to contravene section 1, article 2, of the state constitution?

Section 13-1388 provides as follows:

"Any city of the first class may, as hereinafter provided, acquire by purchase, lease, gift or condemnation any land in or near areas zoned as business, commercial or industrial districts in such city for off-street parking facilities, and may improve any such land by the construction of a building thereon, or otherwise, so as to provide parking facilities. In acquiring any land for off-street parking facilities by condemnation the provisions of article 2 of chapter 26 of the General Statutes of 1949 or any amendments thereto shall, insofar as applicable, apply to and be followed in such condemnation proceedings. Title to any land condemned under this act shall vest in the city upon the payment by the city of the amount of the award in the manner provided in article 2 of chapter 26 of the General Statutes of 1949 or any amendments thereto."

Section 13-1389 provides in substance that when such a city desires to acquire land for off-street parking it shall conduct a survey and investigation for the purpose of determining suitable locations, the approximate cost of acquisition and the improvements to be placed thereon, providing for the employment of appraisers and engineers, and fixing the cost of the survey as a part of the acquisition and improvement of the property to be acquired, and when the survey is completed if the city deems it advisable to acquire land for off-street parking, shall adopt a resolution describing the land, the amount to be expended for acquiring the property for off-street parking, cost of survey, and that revenue bonds be issued to pay the aggregate cost thereof. The remaining portion of the statute provides for the publication of the resolution, and when an action to contest the validity of such proceeding may be brought.

Section 13-1390 is as follows:

"Whenever the governing body of any city of the first class shall adopt the resolution provided for in section 2 [13-1389] of this act said governing body may proceed to acquire the land described in said resolution by purchase, lease, gift or condemnation and may proceed to improve such lands acquired so as to provide off-street parking facilities. The governing body of such a city shall issue and sell revenue bonds as hereinafter provided to pay all costs involved in the acquiring and improving any such lands. The governing body of any such city is hereby authorized to determine the kind or type of off-street

parking facilities to be established, the rates or fees to be charged for the use thereof, the method of operation, including the leasing thereof, and the rules and regulations governing use and operation thereof."

Section 13-1391 provides that the revenue bonds so issued shall not be general obligation bonds of the city, but such· bonds shall be paid from the revenues derived from the parking facilities themselves, and the city shall not have any right to levy any taxes to pay any of the principal or interest on the bonds, or any judgment against the issuing city on account thereof. Provision is also made for the manner of maturing the bonds, their tenure, the rate of interest to be charged, as well as to what recitals shall be included therein, one such recital being that should the revenues be insufficient to pay the interest and principal as they become due, any deficiency may be paid from funds derived from on-street parking meters. Provisions are made that the bonds shall be a specific lien upon the property and the improvements thereon, and that they shall be negotiable. The closing part of the section provides that all revenues shall be deposited in a special fund out of which operational and maintenance costs shall be paid, and how such revenue funds shall be used and expended.

As early as the year 1871, Mr. Justice Valentine speaking for this court, said in *Coleman v. Newby*, 7 Kan. 82, 88:

"While the legislature possess all the legislative power of the state, and while it is true that they cannot delegate any portion of that power to any other body, tribunal, or person, yet it is generally found impracticable for them to exercise this power in detail. They may do so if they choose, or they may enact general provisions and leave those who are to act under these general provisions to use their discretion in filling up the details. They may mark out the great outlines, and leave those who are to act within these outlines to use their discretion in carrying out the minor regulations. . . ."

In the case of *In re Sims, Petitioner*, 54 Kan. 1, 11, 37 Pac. 135, it was said:

"It is highly important to separate the legislative, judicial and executive functions, and that the officer of one department should not exercise the functions conferred upon another. Under our system, however, the absolute independence of the departments, and the complete separation of the powers is impracticable, and was not intended. . . ."

In *State v. Railway Co.*, 76 Kan. 467, 474, 92 Pac. 606, it was held, notwithstanding the well-established maxims of the law, the separation of the powers of government is complete only in theory.

The constitutional maxim which prohibits the legislature from delegating its power to any other body or authority is not violated

by vesting municipal corporations with certain powers of legislation as to matters purely of local concern of which the parties immediately interested are supposed to be better judges than the legislature. (11 Am. Jur. 935, Constitutional Law, § 224.)

It has been well said that to deny to the legislature the right to delegate the power to determine some fact or state of things upon which the enforcement of an enactment depends would stop the wheels of government and bring about confusion, if not paralysis, in the conduct of the public business. (*Schaake v. Dolley*, 85 Kan. 598, 613, 118 Pac. 80.)

It thus appears that under certain circumstances the legislature does have power to delegate legislative powers, and this power has been recognized in conferring on cities powers of local regulation, in providing for drainage districts, and in creation of boards and commissions authorized to administer and execute certain specific powers. (*State, ex rel., v. Hardwick*, 144 Kan. 3, 6, 57 P. 2d 1231.)

It appears that while the legislature possesses all the legislative power of the state, it is impracticable for them to exercise that power in minute detail. It is their function to enact general provisions, leaving to those who know their local problems best the right to fill in the details in carrying out the general provisions granted by the legislature.

An examination of the mentioned statutes reveals that certain standards have been prescribed by the legislature for the acquisition and construction of municipal off-street parking facilities. The legislature specifically provided:

(1) The method of acquisition of any property by the city; (2) the location of such facilities within the city; (3) the improvement for parking facilities; (4) the procedure to be followed in condemnation; (5) when and how title is to vest; (6) the method for gathering information necessary for the determination of the existence of a public need and of the advisability, necessity and benefit to the city; (7) the procuring of experts to obtain the necessary information; (8) the means of paying such experts; (9) the circumstances under which property may be acquired and improved, the procedural steps to be followed in the publication of resolutions, including the contents thereof and the frequency of publication; (10) the method of financing such project; (11) the specific provisions in regard to the revenue bonds issued, the character thereof, the method of paying the bonds, the interest thereon, and the terms thereof:

The matters to be determined by the governing body of the city are:

(1) Whether the facilities are advisable and are of benefit to the city; (2) the amount of money to be expended therefor and, consequently, the amount of the bonds to be issued; (3) the kind or type of facilities to be established; (4) the rates or fees to be charged for the use thereof, and the method of operation of the facilities, whether through lease or otherwise, and the rules and regulations to be adopted concerning the operation of the facilities; (5) the locations and number of facilities to be established.

It is apparent that the standards set out by the legislature were ample, and any further standards might so restrict every city in its attempted operation as to make compliance therewith inoperative. Matters to be determined by a city are purely local in character, and dependent upon the existing conditions and needs of the respective city. It cannot be said that the legislature, a body composed of individuals from 105 counties of the state, could decide with any degree of accuracy whether any specific city of the first class needed municipal off-street parking facilities, or whether such facilities would be of benefit to any city and, if so, where they should be located, and how many.

Found in our general statutes are many instances where powers and authorities have been specifically granted by the legislature, such as section 8-508, the city may regulate the standing or parking of vehicles on its streets; section 12-602, that cities may grade, pave or improve streets and levy assessments for the payment thereof; section 13-443, the city may vacate or close any street or reopen the same; section 13-401, the governing body shall have the care, management and control of the city and its property and finances; and shall have power to enact ordinances for all the purposes named and provided for, not repugnant to the constitution and laws of this state; section 26-201, the city may open or widen the streets; section 13-1023, the city may condemn private property for the improvement of streets and alleys; section 13-423, the city may make all needful police regulations necessary for the preservation of good order; section 13-412, the city is authorized to adopt all measures as may be necessary for the protection of strangers and the traveling public in person and property. Other sections of the statutes might be cited of similar effect.

The case of *Brown v. Arkansas City*, 135 Kan. 453, 11 P. 2d 607, involved the establishment of a city court. The legislature had en-

acted what is now G. S. 1949, 20-1401, providing that when it appeared to the satisfaction of the governing body of a city that a need for establishing a city court existed, it might establish such city court by ordinance. This act prescribed certain standards but failed to provide for the repealing of such ordinance, and it was contended that since the city determined the need, it should determine when the need ceased to exist. We held that the legislature had limited its delegation of authority to the city to one feature only, and that was the determination of a need for its establishment (the court), and that was in the nature of a finding of fact, and not necessarily legislative in character.

In *Barrett v. City of Osawatomie*, 131 Kan. 50, 289 Pac. 970, an action was brought to enjoin the city commission from levying and collecting special assessments on land outside the city limits to pay the costs of construction of a water main on property outside the city. It was contended the levying of the assessments was unconstitutional as it delegated legislative authority to the petitioners in violation of section 1, article 2 of the state constitution. We said:

"Chapter 120 of the Laws of 1925, being entitled 'An act concerning cities of second class, enabling them to extend water mains and water service to territory lying beyond but adjacent to city limit,' is not unconstitutional and void as delegating legislative power to petitioners in violation of section 1 of article 2 of the state constitution, because the request of the petitioners is in no sense imperative, but contingent and conditional upon the discretion to be exercised by the governing body of the city in finding the extension desired and proposed by the petitioners to be of benefit to the city." (Syl. ¶ 1.)

It is apparent from the mentioned statutes that the legislature provided adequate general standards and provisions for cities of the first class to use their discretion in carrying out local details for acquiring off-street parking, and that such details are in the nature of findings of fact and not legislative in character.

In view of what has been said, we are of the opinion that G. S. 1953 Supp., 13-1388 to 13-1391, inclusive, do not constitute an illegal delegation of legislative power to cities of the first class, and are not repugnant to section 1, article 2, of our state constitution.

This brings us to the second question—does the taking of private property for off-street parking constitute a public use?

That the legislature may authorize the acquisition and appropriation of private property for public use is well entrenched in our law of eminent domain.

In *Irrigation Co. v. Klein*, 63 Kan. 484, 488, 65 Pac. 684, it was said:

". . . It is equally well settled that the legislature may authorize the taking of private property by private persons or corporations for public uses, the owner of such property being compensated therefor. Courts determine what is a public use; legislatures, when the power of eminent domain may be exercised in its promotion. Courts may not interfere to limit or control the discretion of the lawmaking power as to the character, quality, method or extent of the exercise of the power of eminent domain by a private person or corporation engaged in the promotion of a public use, when once it has been determined that such use *is* a public one. . . ."

In *Poole v. City of Kankakee*, 406 Ill. 521, 94 N. E. 2d 416, it was stated that the final determination of whether a use or purpose was within the limits of the legislative discretion was a judicial function. Thus it is for the courts to decide whether a given use is a public use. Courts of last resort have departed quite widely in their efforts to define public use. The local conditions and needs of the people have much to do with the question. Since the determination of what constitutes a public use is a judicial function, it becomes necessary for us to determine if the acquisition and appropriation of privately owned property by a city for off-street parking constitutes a public use.

While this is a question of first impression in Kansas, this court recognizes that in the exercise of police powers conferred by statute, a city of the first class has the authority to enact an ordinance providing for the regulation of traffic on its streets by means of parking meters. (*City of Hutchinson v. Harrison*, 173 Kan. 18, 244 P. 2d 222.)

In recent years, in determining what is a public use in cases involving municipal off-street parking facilities, the findings and holdings of the courts have been to a great extent directed by the consideration of, first, legislative provisions; and second, common knowledge of necessity, although a few courts have considered other rationale. Accordingly, where a state or municipal legislative body has made a provision for the establishment of municipal off-street parking, and has provided for the condemnation of private property for such establishment, most courts have accepted such provisions as indicative that a public use is involved.

In the case of *Bowman v. City of Kansas City*, 361 Mo. 14, 25, 233 S. W. 2d 26, which involved the validity of off-street parking facilities, the question of public use was ably discussed. The Missouri court said:

" 'To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such

a standard would compel us to retain in the law, as appropriate for public expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions. Nor can we be governed alone by the fact that only a portion of the public will be directly benefited, or benefited in a greater degree than the public generally.' "

In *City of Richmond v. Dervishian,* 190 Va. 398, 57 S. E. 2d 120, a question involved municipal off-street parking. The Virginia court stated, in substance, that the granted powers authorizing a city to acquire property for public uses and for the purposes so conferred is an express declaration of the legislature that the uses contemplated are public ones. Such declaration is not conclusive but raises a presumption that the use is a public use.

In *McSorley v. Fitzgerald et al.,* 359 Pa. 264, 268, 59 A. 2d 142, it was said:

"It is true, of course, that the question whether the use to which a governmental agency intends to devote property taken under the alleged right of eminent domain is a public one, is a judicial question for the determination of the court: (citing cases). But a legislative declaration with respect to that question, while not conclusive, is entitled to a prima facie acceptance of its correctness: (citing cases) . . ."

(See, also, *Wayne Vil. President v. Vil. Clerk,* 323 Mich. 592, 36 N. W. 2d 157, 8 A. L. R. 2d 357; *Brodhead v. Denver,* 126 Colo. 119, 247 P. 2d 140; *Gate City Garage v. City of Jacksonville,* (Fla.), 66 So. 2d 653.)

In the instant case, the legislature has provided for the condemnation of private property for municipal off-street parking facilities (13-1388). It is also recognized that such a condemnation would be for a pubilic use (13-1389). In addition, the City of Topeka has found that additional parking facilities are essential to the welfare and benefit of its people, and has declared it advisable and of benefit to the city that land be acquired for such facilities. This, at least, raises a presumption that such condemnation is for a public use. We are cognizant of the fact that cities are becoming more and more concerned with the question of what to do about the parking problem and congested traffic conditions in cities generally throughout this state, and in an effort to solve this problem have directed attention to off-street parking of automobiles through the use of parking lots and municipally-owned parking garages. Cities have found that their commercial, business and industrial districts can no longer satisfy the needs of the public by on-street parking such as

is found on both sides of the main streets of our cities. Some cities have been content to remain passive to this problem, while others have tried to manage with the same available space by installing parking meters, limiting the time for parking and assessing a fine against those who overpark, but such efforts have afforded little more than temporary relief and have only delayed the approach to the real problem. In the larger cities, the public is reminded daily of the inadequacy of on-street parking. When downtown traffic becomes congested, double and triple parking in some instances have become hazardous, not only to drivers of vehicles but to pedestrians alike. Traffic divisions of police departments have tried every conceivable plan to eliminate the traffic jams and hazards occasioned thereby, but with little success. Governing bodies of cities are aware of the increasing number of automobiles that appear yearly, and the increase in the injury and death rates to citizens, due to improperly controlled traffic. The courts cannot help taking judicial notice of these existing conditions. There can be no question but that it lies within the power of the cities of the state to regulate and control the traffic upon their streets. Since the regulation of traffic upon the streets of a city is in the interests of public safety, convenience and necessity, and the stopping or parking of vehicles along the streets is a legitimate use of the streets, subject to legislative control, it therefore follows that the provisions of G. S. 1953 Supp., 13-1388 *et seq.*, providing for the acquisition of property for off-street parking facilities, is for a public purpose and use.

This brings us to the final question to be determined in this action. Was the contract for a lease, entered into between the City and Park and Shop for the operation, management and control of off-street parking facilities, valid?

It is so well settled that cities generally possess authority to lease municipally-owned property for public use that no authorities need be cited. The contract for a lease of certain described property between the City and Park and Shop was entered into on September 8, 1952. This contract consisted of twenty-four paragraphs, some of which are subdivided, and is quite lengthy. The lease was to run for a period of thirty years from the date of the first issuance of bonds, or until the retirement of the revenue bonds issued pursuant to authorization, if they be retired in less than thirty years. At the termination of the lease, other than by forfeiture, Park and Shop was to have the first right and option to re-lease the parking facilities covered by the agreement under the same terms and con-

ditions which the City would be willing to lease to any other tenant or operator. Paragraph 17 of the contract reads, in part, as follows:

"Should first party, from the proceeds of said bond issue above referred to, (a) acquire any additional parking sites or facilities, or (b) build any additional parking garages or facilities on any of the sites acquired under said bond issue, then second party shall have the option to lease such additional parking facilities, . . ."

It was early held, and over the years the rule has been, that a municipal corporation is a creation of law and can exercise only powers conferred by law and take none by implication, and that the only power it may acquire in addition to that expressly granted is the power necessary to make effective the power granted. (*Yoder v. City of Hutchinson*, 171 Kan. 1, 8, 228 P. 2d 918; *Johnston v. City of Coffeyville*, 175 Kan. 357, 361, 264 P. 2d 474; *State v. Hannigan*, 161 Kan. 492, 170 P. 2d 138.)

Section 13-1390 authorizes a city to lease parking facilities and to contract accordingly. However, it does not contemplate or purport to authorize a city to contract to lease all parking facilities to be acquired in the future. As stated, a city has only such powers as are granted by the legislature, and this does not, by implication, confer upon a present governing body the authority to bind its successors in office to lease parking facilities not yet in contemplation. For the present governing body to agree to lease to Park and Shop all future acquired parking facilities is clearly an unreasonable abuse of authority.

Paragraph 11 of the contract reads, in part:

"Hours of operation and fee schedules, as well as all rules and regulations governing the conduct or operation of each site, shall be mutually agreed upon in writing by the parties hereto. . . ."

Section 13-1390 provides that the city shall establish the rates and fees to be charged for the use of off-street parking facilities and the method of operation. Nowhere in the statute can it be found that the city has any authority to delegate any portion of its duties, either wholly or in part, to any private individual or corporation, nor does the statute contain any implication to that effect. It is clear that this provision of the contract is an unlawful delegation of the city's power granted by the legislature.

Paragraph 19 of the contract provides, in part, that in the event any of the parking facilities be totally destroyed or damaged beyond use, the City shall rebuild or restore the premises within a reasonable time within their financial ability so to do. This provision is un-

reasonable in that should the property be destroyed at some future date it would require the City to rebuild or repair, even though subsequent governing bodies might determine that it could no longer serve a public use and that it would not be advantageous to the general public to rebuild or repair. Under the authority delegated to a city by the statute, the matter of rebuilding or repairing would be a question to be determined by the then governing body of the city. The present governing body may not bind future bodies with the advisability of rebuilding or repairing such structures.

The contract also provides that Park and Shop shall have the right to approve the plans and specifications for the improvements on said sites, the contracts for the improvements, and for clearing and paving the lots. This contravenes section 13-1390, in that the obligation of approving the plans and specifications, the contracts for the improvements, clearing and paving the lots, are duties and functions to be performed by the governing body of the city, and any attempt to delegate that power or any portion thereof to an individual or private corporation is a direct violation of the power conferred by the legislature.

Other provisions of the contract need not be discussed. However, the failure to so discuss them does not amount to an approval of their terms. It is sufficient to say that those mentioned are adequate for us to hold that the contract for the lease entered into by the City is invalid.

It is the judgment of this court that: (1) the provisions of G. S. 1953 Supp., 13-1388 to 13-1391, inclusive, do not constitute an illegal delegation of legislative power to cities of the first class; (2) the mentioned sections do not contravene section 1, article 2, of our state constitution; (3) the acquisition of private property for off-street parking facilities constitutes a public use, and (4) the contract for a lease entered into between the City and Park and Shop for the operation, management and control of off-street parking facilities is invalid.

It follows that conclusion No. 4 requires a judgment for the plaintiff for costs, notwithstanding our conclusions Nos. 1, 2 and 3.

Judgment is rendered for the plaintiff for costs in accordance with the views herein expressed.

HARVEY, C. J., (dissenting in part and concurring in part). I dissent from the holding that the acquisition of property by the city for off-street parking facilities is for public use and from all parts of the

opinion predicated upon that view. My view is that the construction and operation of off-street parking property is an ordinary commercial business which the legislature cannot grant to cities and in which the city has no authority to engage. I concur in the holding that the proposed contract between the city and Park and Shop, Inc., is invalid for all the reasons stated in the opinion and think more could be added.